**GT** GreenbergTraurig

Peter D. Kieselbach
(612) 259-9714
kieselbachp@gtlaw.com

Dated as of May 14, 2026

**VIA US MAIL/EMAIL**

Roger Schlossberg, Chapter 11 Trustee
Schlossberg | Mastro
P.O. Box 2067
Hagerstown, MD 21742-2067
Email: rschlossberg@schlosslaw.com

Zvi Guttman, Chapter 7 Trustee
The Law Offices of Zvi Guttman, P.A.
Post Office Box 32308
Baltimore, Maryland 21282
Email: zvi@zviguttman.com

Re: Joint Engagement for Legal Services

Dear Roger and Zvi:

Thank you for agreeing to engage Greenberg Traurig, LLP ("GT"). We appreciate the opportunity to provide legal services for Roger Schlossberg, as chapter 11 trustee ("Chapter 11 Trustee") of the bankruptcy estate of Chasen Construction LLC (the "CC Estate"), and Zvi Guttman, as chapter 7 trustee ("Chapter 7 Trustee") of the bankruptcy estate of Brandon Chasen (the "BC Estate"). The CC Estate and the BC Estate are referred to collectively as the "Estates." The Chapter 11 Trustee, the Chapter 7 Trustee, the Estates, and the Estate Affiliates (as defined below) are referred to collectively as "you" or the "Parties." This letter sets forth the terms and conditions by which our firm will represent you (the "Agreement").

This Agreement is subject to the Bankruptcy Code including 11 U.S.C. §§ 327-331 and the Bankruptcy Rules including Rules 2014 and 2016 and approval by the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court") in the chapter 11 case of Chasen Construction LLC, Bky. No. 25-12356, and the chapter 7 case of Brandon Chasen, Bky No. 25-15437. The Chapter 11 Trustee and the Chapter 7 Trustee will each file an application for employment of GT under 11 U.S.C. §327. If this Agreement is acceptable to you and approved by the Bankruptcy Court, please sign and return a copy to me at your earliest convenience. While we request a signed copy for our records, in the absence of you providing that, this Agreement will be effective if approved by the Bankruptcy Court and any services as to the subject matter defined below are rendered by us and accepted by you.

1

ADMIN 701161742v6

1.      <u>**Our Work for You**</u>:

(a)      <u>**The Engagement & Matter**</u>.  GT will represent the Parties in pursuing the Actions (as defined below) for a contingency fee equal to 1/3 of any gross recoveries to the Parties, either from cash payments or the value of any property returned to the Parties ("Contingency Fee"). All costs and expenses of GT (including any advances for expert witness fees/expenses) will be paid from recoveries achieved from GT's efforts and in addition to the Contingency Fee. If there are insufficient funds to pay GT's costs and expenses from recoveries, the Estates will pay such costs and expenses from funds otherwise distributable by the Estates. Except as provided in the next paragraph, payment of the Contingency Fee and expenses and costs is subject to Bankruptcy Court approval. GT understands the Estates have limited resources and GT may be asked to advance funds to pay expert witness fees/expenses; the Parties acknowledge that GT's obligation to make such advance is subject to further agreement between GT and the Parties as to the terms of any advance, and, if applicable, Bankruptcy Court approval.

It is currently contemplated that the Parties will seek confirmation of a chapter 11 plan of liquidation and, as part of such plan, contribute all Actions to one or more litigation/liquidating trusts (collectively, the "Litigation Trusts").  Any such plan shall incorporate the terms of GT's engagement as special counsel, including payment of GT's fees and expenses by the Litigation Trusts (subject to Bankruptcy Court approval if applicable).  Post-confirmation, GT and the Parties may choose to enter into an amended Agreement, on substantially the same or different terms, to recognize the creation of the Liquidating Trusts.

The term "Actions" includes any right, claim or remedy, including fraudulent transfer actions, avoidance actions, breaches of fiduciary duties, unlawful dividends, tort claims, and all actions derivative of such claims (e.g.*,* aiding and abetting a fraudulent transfer or the subsequent transferee of a fraudulent transfer) belonging to the Estates or which the Estates would have the right to assert, directly or indirectly, against any party, as agreed to between GT and the Parties.  If GT has a conflict with respect to any potential litigation defendant, GT will advise the Parties of the existence of such conflict, and the Parties acknowledge that they must retain conflicts counsel to pursue such claims.

You and GT may agree to limit or expand the scope of this engagement, but that will occur and be effective only if agreed in writing and, if applicable, subject to Bankruptcy Court approval.  If we agree on further services and, if applicable, obtain Bankruptcy Court approval for such further services, but do not enter into a different or further engagement letter for them, this engagement letter will control our representation for such services.

(b)      <u>**The Client**</u>.  The "client" for this engagement is you and any subsidiary or affiliate you control for which an Action could be asserted for the benefit of the Estates (collectively, the "Estate Affiliates"); provided, however, for the avoidance of doubt, the Estate Affiliates shall not include any of the entities or special purpose entities owned or controlled by the Estates or formerly owned or controlled by the Debtors or the principals thereof unless otherwise agreed by the Parties.  Other than the foregoing parties, GT does not and will not regard an affiliate of a client entity (i.e., parent, subsidiary or other entity partially or wholly owned by or owning it) or a person owning, employed by or otherwise connected with the client (e.g., officer, director, member, partner, shareholder, owner, employee, etc.) as a client of GT for any purpose

2

unless a client-lawyer relationship has been established by an express written agreement accepting that specific entity or person as a GT client and identifying the matter on which GT has agreed to provide services.  Similarly, GT will not regard a representation that is adverse to such an affiliate or person as adverse to the client being represented by GT under this Agreement or in any other matter to which this Agreement applies.  Accordingly, if there is such an affiliate or person you wish GT to regard as a client for conflict purposes, please specify that in writing.  Unless any such entity or person is expressly accepted in writing by GT as a client, the entity or person will not be a GT client.

(c)    **We Provide Only Legal Services**.  We will provide only legal services pursuant to this engagement.  We are not providing business, investment, insurance, accounting or other non-legal services.  By way of example only, we are not advising you about the character or creditworthiness of those with whom you may be dealing (or agreeing to investigate such issues) or any other non-legal advice regarding the subject matter of this engagement.  You confirm that you are not looking to and will not rely on GT for those types of services.

i.    **Corporate Transparency Act**.  The Corporate Transparency Act requires entities formed in a foreign country which are registered to do business in the United States to report to the Financial Crimes Enforcement Network ["FinCEN"] of the U.S. Department of the Treasury the identity and other information about their beneficial owners and the persons who create them.  That is the responsibility of the entity itself i.e., the Client and not GT; and, regardless of whether GT advises or prepares documents as to your structure or ownership, GT will not have or accept responsibility for such reporting or for storing or collecting information for it.  If a GT attorney or paralegal is listed as the applicant in your report of beneficial ownership to FinCEN, that will not change the fact that it is your (or the reporting entity's) responsibility, not GT's, to file the report and submit further required information, including updates, to FinCEN. GT persons who act as an applicant for a company will be responsible only to report and update their own personal information with FinCEN.

(d)    **Exclusions from Legal Services**.  Unless expressly included in the subject matter of this engagement, our services will not include advice relating to the tax implications or consequences of this engagement or the results of our representation.

(e)    **No Continuing Obligation**.  Subject only to possible obligations under the Rules of Professional Conduct ("Ethics Rules") or law, we will have no continuing obligation to you concerning the subject matter of this engagement or this engagement after it has ended, including in subsequent proceedings or requirements you may have regarding the subject matter of this engagement.

(f)    **Insurance Coverage**.  You may have rights under insurance policies that entitle you to a defense or indemnification for potential losses, attorneys' fees or other rights in connection with the subject matter of this engagement.  However, unless otherwise expressly agreed in writing, this engagement does not include analysis or pursuit of coverage rights.  We will of course cooperate with reasonable requests to provide information to your insurers.

ADMIN 701161742v6

2. **Conflicts**:

GT represents a broad group of clients in a variety of legal matters. As a result, conflicts of interest may arise which, absent an effective conflict waiver, may adversely affect our ability to represent you or your affiliates in pending or future matters and the ability of other clients to engage GT as their counsel. We wish to be fair to all clients and assure that they have the right to use us as counsel. Accordingly, this Agreement confirms that:

(a) **Consent and Waiver**. You agree (after having had sufficient opportunity to consider this Agreement and consult independent counsel to the extent you may wish) that you are adequately informed about the possibility and nature of such conflicts and potential conflicts and of the risks and consequences of them. Therefore, on the conditions stated in this paragraph, you, for yourself and your affiliates, to the fullest extent legally and ethically permissible:

- waive any such actual or potential conflict which may be presented or occur as a result of this engagement;
- consent to GT's representation now or in the future of other present or future clients on any other matter, whether or not adverse to you or any of your affiliates (including, without limitation, in transactions, litigation, and other legal or ethical matters) ("Permitted Adverse Representation"); and
- promise not to assert that this engagement or any other GT representation of you or your affiliates provides a basis for disqualifying GT from representing any other party in any "Permitted Adverse Representation" or creates or supports any claim of breach of duty against GT.

(b) **Conditions**. The above-stated waiver, consent and promise are conditioned upon GT's agreement that GT:

- will not represent another client adverse to you in a matter substantially related to the the subject matter of this engagement or to any other matter in which GT is representing or has represented you or your affiliates;
- will screen those attorneys representing you or your affiliates from those attorneys representing other clients adverse to you or your affiliates; and
- will not use or disclose your or your affiliates' confidential information which is not public unless permitted under applicable Ethics Rules, the law or a written agreement pertaining to such confidential information.

(c) **Continuation**. Subject to any limitations under the law and Ethics Rules, these waivers, consents and promises, and the conditions stated above, will continue after the end of GT's representation of you or your affiliates as to the subject matter of this engagement or in any other engagement.

3. **Joint Representation**: We have been retained to jointly represent the Parties (the "Joint Clients") in this engagement; and have agreed to do so with these understandings:

(a) **No Conflict**. Based on the facts known to us, we see no actual or potential conflict or divergence of interest between the Joint Clients or any of them with respect to the subject matter of this engagement; and we have determined that we can adequately represent the

4

ADMIN 701161742v6

interests of each client if each has knowingly consented to the joint representation. Indeed, as explained to us, this joint representation will benefit the Joint Clients.

(b) **Consequences**. We have explained the following aspects of a joint representation, including without limitation:

(i) There is an attorney-client privilege between the Joint Clients and GT as to third parties subject to applicable law and Ethics Rules. But, there is no attorney-client privilege between Joint Clients. Therefore, we cannot keep confidential from any Joint Client information communicated to us by another Joint Client in connection with this engagement during the joint representation. Accordingly, GT will be permitted to disclose to all Joint Clients information any of you provide regardless of whether the provider may consider it confidential. Also, if a dispute arises between Joint Clients, any information given to us regarding matters of common interest will not be privileged or confidential in any proceeding to resolve the dispute.

(ii) Your interests may diverge during this engagement or facts may come to light suggesting an actual or potential conflict between you concerning the subject matter of this engagement. If that occurs, we and you will bring it to the attention of all Joint Clients. We will then discuss with the Joint Clients whether a waiver is required to allow us to continue the joint representation. If a waiver is not permitted or a waiver is required but not given by any Joint Client, we may be compelled to withdraw from the joint representation and possibly entirely from the matter.

(c) **Separate Counsel**. If, at any time, any of you believe your individual interests would be better served by retaining separate counsel, you may do so. Similarly, if any of you or we conclude, for any reason, that our continued joint representation should be terminated, you or we will promptly advise all parties and we will discuss that with the Joint Clients. If we do not reach an agreement with all Joint Clients regarding our continued joint representation of some or all of you, we will be permitted to end our representation of any of you. In that event, the provisions elsewhere in this Agreement concerning GT's permissible continued representation of the other Joint Clients will apply.

(d) **Termination of Joint Representation**. If the representation of any of the Joint Clients is terminated for any reason, then, to the maximum extent legally and ethically permissible: [i] we may continue to represent the other Joint Client(s); [ii] each of you consents to our doing so and waives any conflict or potential conflict that might prevent us from doing so; and [iii] each of you promises not to assert any objection to our doing so for any reason (including, without limitation, our possession of confidential information of yours) or to take any steps to disqualify GT from continuing to represent any other Joint Client(s) who may wish us to do so.

(e) **Financial Responsibility**. Notwithstanding the end of our representation of the Joint Clients, unless otherwise agreed in writing: [i] each Joint Client will remain responsible for our fees and expenses up to the date of that termination on the terms set forth in this Agreement; and [ii] any Joint Clients who we continue to represent thereafter will alone be responsible for fees and expenses incurred after that. If a disagreement arises as to who must pay any fees and expenses associated with our representation of the Joint Clients, each and all of you will assure that we are

ADMIN 701161742v6

paid timely and in full, and you will resolve by yourselves the disagreement; we will not represent any of the Joint Clients in connection with that disagreement.

4. **The GT Team**:  Michael Fisco, Peter Kieselbach, and Michael Krauss will be the attorneys principally responsible in this engagement.  We may also use other lawyers, paralegals, and staff members as we deem appropriate to properly represent you.  At present, we expect to include and enlist the assistance of Carlos Alonso Gayon and Esther Raty, both associates at GT. That may change and additional or different attorneys and paralegals may participate or replace others, based on subsequent changes within GT or otherwise relating to this engagement.

If there are changes in staffing, you will be advised.  If you wish different persons to be involved, we will discuss that with you to seek to assure you are satisfied with the staffing.

5. **[INTENTIONALLY OMITTED]**

6. **Termination and End of Representation**:  Subject to applicable court and Ethics Rules, GT or you may terminate this engagement at any time for any reason.  Otherwise, our engagement and representation will end automatically upon the earlier of our final bill for this engagement or six months after we have last recorded billable time for work on it other than as to later requests for audit responses or information about the engagement.

7. **No Guaranties**:  We have not made any promise, assurance or guarantee concerning the outcome or success of this engagement or our services and have not accepted any contractual obligation in that regard.  Nor have we made any representation or warranty to you other than as may be expressly stated in this Agreement.

8. **Client Documents & Data**:

(a) **Maintenance**.  We will maintain the documents you give us in our client file for this engagement.  At the conclusion of the engagement (or earlier, if appropriate), you agree to advise us which, if any, of the documents in our files you want given to you.  We will retain those documents not given to you and ultimately destroy them in accordance with our record retention practice then in effect.  We may also retain copies of documents we give you.

(b) **Cloud Storage**.  GT will use third-party cloud services for your data and the data of other parties during and after our representation of you, which we believe provide enhanced data accessibility.  GT is ISO 27001:2013 data security certified and we use only service providers we believe have the same or better security than we use at GT.  Cloud services do not guaranty absolute protection from invasion or misuse; and no one fully knows the capabilities of hackers, now or in the future.  But we believe the cloud services we use have and provide appropriate data and security protections for the confidentiality of data without significant risk of inappropriate access.  We believe they also have the ability to take advantage of future security developments.  We require that those cloud services employ data encryption, password protection, access verification, firewalls, antivirus software, intrusion detection, and system monitoring, as well as assurance of adherence to applicable data privacy and security laws.

(c) **Generative Artificial Intelligence**.  GT uses and will continue to use artificial intelligence ("AI") tools that are integrated with other products we use every day in our

ADMIN 701161742v6

representation of you such as spell check, on-line legal research and similar tools. We will continue to use such AI tools in connection with this engagement.

GT also uses and will continue to use third-party and/or GT-created generative AI services for internal purposes, such as assisting with our billing, document management, form files and similar functions. Finally, GT may use certain generative AI tools to facilitate the delivery of our legal services to you to improve efficiency, accuracy, and the quality of our services. For example, we may use generative AI tools for document reviews and summaries, legal research, contract analysis, due diligence, and other tasks. As such, GT may use AI tools to query or otherwise interact with your information or data, but your data will not be used to train third party AI models. Further, your data will not appear in an output result available to third parties or be retained by a third-party generative AI provider.

We will not use generative AI tools as a substitute for our professional judgment. All work performed with the assistance of a generative AI tool will be reviewed and approved by a qualified attorney before any advice or work product is provided to you. Additionally, GT will take reasonable steps to protect the confidentiality of your information and comply with applicable ethical and legal obligations. GT evaluates generative AI providers we engage to ensure they have technical and administrative controls to maintain the confidentiality and security of your and our information. However, generative AI is still evolving, indeed rapidly; and it is not possible to anticipate or know the capabilities of potential intruders and hackers of data systems, including those containing or using generative AI. Therefore, we cannot ensure that our use of generative AI will be immune from unauthorized access or misuse.

(d)     **Requests for Copies**. If you request a copy of a portion or all of our files for this engagement, whether before or after the end of our representation, and if a substantial amount of material is being provided, GT may, at GT's option, bill for the reasonable costs of copying, assemblage and delivery of such materials; and, if billed, you will pay that.

(e)     **GDPR**. Personal data of individuals located in the European Economic Area ("EEA") is protected by the European Union's General Data Protection Regulation ("GDPR"), similar legislation by other EEA states, and other privacy laws applicable to it. Personal data is broadly defined in the GDPR, and includes identification and other information about oneself such as without limitation national identity numbers (similar to US social security numbers), personal addresses, online names, account numbers, physical and mental health, and cultural and social identity. If you give GT such personal data of anyone or access to it, you are representing to GT that you are entitled to do so under Articles 6 to 11 of the GDPR or other applicable statutory provisions.

You represent and warrant that you are entitled to provide such data and that you will comply or, if such data has been given, have complied with or are exempt from any notification or other requirements applicable to doing so.

(f)     **Official Inquiries**. You will pay the hourly fees and expenses incurred if GT is required to participate in a future inquiry, investigation or proceedings arising out of or in connection with this engagement, including, without limitation, producing documents, seeking to claim or defend any attorney-client privilege or giving evidence at an inquiry.

ADMIN 701161742v6

9.      **Privileges**:  Many but not all of our communications with you will be subject to the attorney-client privilege in the jurisdictions involved.  Subject to and as provided in applicable Ethics Rules, we will seek to maintain that privilege unless you instruct or consent otherwise.  You will advise us if your communications with us are subject to any other privilege or confidentiality agreement so that we may take appropriate steps to comply with that.  If you share our privileged communications with third parties, or direct us to do so, you may lose the benefit of the attorney-client privilege as to those communications, not only as to the parties with whom such communications are shared, but more broadly as to any third parties.

GT has an Office of Firm Counsel (or General Counsel office) which provides legal advice to our attorneys and staff.  We consider and intend the communications between attorneys in that office and GT personnel seeking or containing possible legal advice and any legal advice given by that office to be subject, to the maximum extent available under the law and Ethics Rules, to an attorney-client privilege between GT and those persons, and not subject to any fiduciary or other duty GT has to you.  As a result, we are proceeding on the understanding that GT is not and will not be obligated to tell you of those communications or disclose their content and that advice in any proceeding between us will not be discoverable by you.

This confirms your consent to that privilege and that you are not entitled to disclosure of those communications and that advice.

10.     **Miscellaneous**:

(a)     **Binding Effect**.  This Agreement is personal to us and is not assignable by either of us without the written consent of the other.  However, your economic obligations hereunder (including, without limitation, the attached Billing Policies) are and will be binding on (as applicable) your and our successors and estates, heirs, trustees and other legal representatives.

(b)     **Modification**.  This Agreement may not be changed, amended, or otherwise modified, in whole or in part, except in a writing executed by all parties to this Agreement.  No unilaterally proposed or announced change, supplementation, interpretation, guideline or other statement or pronouncement (by either GT, you or anyone else), whether inconsistent with any provision of the Agreement or otherwise, will be effective or binding or will otherwise suffice to modify or add to this Agreement unless accepted in writing by the other of us and/or, as applicable, any other person or entity sought to be bound or otherwise affected by it.

(c)     **No Waiver**.  No waiver of any provision of this Agreement (including, without limitation, the attached Billing Policies) will be effective or binding unless made in writing and signed by whoever is claimed to have given the waiver.

(d)     **Partial Invalidity**.  If any provision of this Agreement is found to be unenforceable, invalid or illegal, it shall be automatically amended and interpreted in such manner as to be enforceable, valid and legal to the maximum extent possible to fulfill the intent of such provision. The validity or enforceability of the remainder of the Agreement shall not be affected by the invalidity, unenforceability or illegality of any provision unless that negates the material purpose of this engagement (e.g., our provision of legal services on agreed economic terms).

ADMIN 701161742v6

(e)    **Entire Agreement, Etc**.  This Agreement contains and sets forth the entire agreement between us, and supersedes all prior or other agreements, understandings, writings, pronouncements (written and oral) that may exist or have existed or be promulgated as to this engagement and the subject matter.  Neither of us has relied on any representation, warranty or other statement or promise concerning this engagement and/or the subject matter which is not stated in this writing.

(f)    **Governing Law, Etc**.  All of the rights and obligations of either of us arising under or related to this Agreement are and will be governed by the laws of the State of Maryland irrespective of conflicts of law principles that might otherwise apply.  Further, the parties hereto acknowledge and agree that the Bankruptcy Court is vested with exclusive jurisdiction over any disputes arising under this Agreement with venue thereof being proper only in said court. All objections by the parties to such jurisdiction and venue hereby irrevocably are waived.

If and to the extent permissible, the Ethics Rules of the jurisdiction in which a GT attorney provides services as to the subject matter of this engagement or otherwise in this engagement exclusively govern and apply to the conduct of that attorney.

(h)    **Advice as to Agreement**.  We have encouraged and given you an opportunity to consult with other independent counsel and advisors of your choice regarding the terms and advisability of this Agreement before you sign it or accept our legal services, to the extent you may wish so that Your assent has been carefully considered and informed.  You confirm that you have done so to the extent you wish and feel needed, and that you are comfortable you have the information and advice you need or deem prudent in this regard.

(i)    **Marketing Permission**.  You consent that GT may use your name, logo, and a general description of this engagement in its business development efforts and materials.

If you do not wish for this information to be used in that manner, please draw a line through this subparagraph and initial that change in the margin.

(j)    **Headings**.  The headings on paragraphs and subparagraphs of this Agreement are for convenience only and have no effect other for convenience of reference.

(k)    **Effectiveness and Execution**.  This Agreement will become effective upon our rendering of any services for you.  However, we recommend and ask that you execute and return a copy of this Agreement for our records and keep one for your records.  In that regard, this Agreement may be executed in counterparts, which shall constitute together one and the same instrument.  Electronic, PDF and facsimile signatures shall be as effective as original ink signatures.

ADMIN 701161742v6

Please countersign a copy of this letter and return it with your retainer payment.  Either your return of a signed copy or acceptance of services rendered will constitute your assent to this Agreement and make it effective as the contract governing this engagement.

Very truly yours,

**GREENBERG TRAURIG, LLP**

By: */s/ Peter D. Kieselbach*
Peter Kieselbach
Shareholder

*ACCEPTED AND AGREED*
*WITH CONSENTS AND WAIVERS GRANTED:*

*/s/ Roger Schlossberg*
**Roger Schlossberg, as Chapter 11 Trustee**
Dated: May 21, 2026

*/s/ Zvi Guttman*
**Zvi Guttman, as Chapter 7 Trustee**
Dated: May 21, 2026

10

ADMIN 701161742v6