**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **In re:**<br><br>**Chasen Construction LLC,**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 25-12356-NVA** |

**MOTION TO COMPEL COLUMBIA NATIONAL'S PRODUCTION OF DOCUMENTS IN RESPONSE TO BANKRUPTCY RULE 2004 SUBPOENA**

Creditors Family Pension Corp. 401k Plan ("Family Pension"), Four Kids Investment Fund, LLC ("Four Kids"), Jonathan Honig, as Trustee (the "Trustee") by and for the Renee Honig 2019 Irrevocable Trust Agreement U/A DTD 07/09/2019 (the "Trust"), and Jacob Honig (collectively, the "Interested Parties"), by and through their undersigned counsel, Ice Miller LLP, pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, Federal Rule of Civil Procedure 45(d)(2)(B)(i), and Maryland Local Bankruptcy Rules 2004-1 and 7026-1, move the Court for an order compelling Columbia National Real Estate Finance, LLC ("ColumbiaNational") to produce documents responsive to the Interested Parties' Rule 2004 subpoena served in connection with this Court's Order [Dkt. 184] granting the Interested Parties' request for authority to conduct a Rule 2004 examination of ColumbiaNational.

## I. Factual Background

On April 30, 2026, the Interested Parties filed a Motion for a Rule 2004 Examination of ColumbiaNational (the "Motion for Examination"). Dkt. 177. This Court granted the Motion for Examination by order dated May 19, 2026. Dkt. 184. In connection with that order, on June 2, 2026, the Interested Parties served ColumbiaNational with a subpoena (the "Subpoena") for the production of documents. A true and correct copy of the Subpoena is attached hereto as **Exhibit 1**.

ColumbiaNational served written objections on June 16, 2026. A true and correct copy of that correspondence is attached hereto as **Exhibit 2**.

On June 22, 2026, counsel for the Interested Parties conducted the first of a number of meet and confer conferences with counsel for ColumbiaNational counsel, who asked the Interested Parties to coordinate their examination efforts with the Chapter 11 and Chapter 7 trustees (the "Trustees", and collectively with the Interested Parties, the "Requesting Parties"). The Trustees filed their own motions for Rule 2004 examinations of ColumbiaNational in this case and the related Chapter 7 case, *In re Brandon M. Chasen Sr.*, Case No. 25-15437 (Bankr. D. Md.) (the "Chapter 7 Case"). *See* Dkt. 181, 184; Chapter 7 Case, Dkt. 190, 195. In connection with those motions, the Trustees served Rule 2004 subpoenas on ColumbiaNational on or about June 22, 2026.

On July 16, 2026, ColumbiaNational's counsel proposed a single joint conference among all three groups of counsel so the parties could collectively identify areas of agreement/disagreement. During that joint video conference on July 23, 2026, ColumbiaNational offered to produce its deal files for the transactions involving the Debtor, which it indicated would be relatively easy to compile. The Requesting Parties also made it clear that they also sought the production of relevant email and mobile device communication and offered to propose a protocol for the collection of same. Counsel for the Trustees, the Interested Parties and ColumbiaNational held a follow-up meet and confer conference on July 29, 2026.

On August 7, 2026, the Trustees' counsel sent ColumbiaNational a list of proposed search terms that had been jointly compiled by the Requesting Parties. On August 19, 2026, ColumbiaNational responded by marking certain terms as "overly broad," without providing any hit counts or other data to support that position. In the same response, ColumbiaNational stated

that it would reserve the right to withhold or claw back any emails it deemed irrelevant and refused to produce any documents unless the requesting parties agreed to reimburse its costs. ColumbiaNational also stated that it "will not produce any documents until a protective order is agreed upon." On August 28, 2026, the Interested Parties asked ColumbiaNational to provide a hit report showing the number of documents each proposed term returned, including unique hits per term, so that the parties could meaningfully evaluate ColumbiaNational's conclusory and summary overbreadth and burden objections. The Interested Parties also asked ColumbiaNational to identify the custodians whose files it would collect, to confirm that it would collect from personal devices, and to explain the status of mobile device communications belonging to ColumbiaNational employee Kevin Tehan, which ColumbiaNational's counsel had previously suggested might no longer exist.

On September 1, 2026, ColumbiaNational proposed what it called a "comprehensive production protocol." A true and correct copy of that correspondence is attached hereto as **Exhibit 3**. Under that protocol, ColumbiaNational offered to produce the complete origination and servicing files for all loans involving Brandon Chasen or the Debtor. It also offered to collect all emails from January 1, 2018, through July 31, 2026, for four custodians (Kevin Tehan, Brett Parker, Tyler Harned, and Greg Dormitzer), whom it described as the employees responsible for originating the Chasen loans. ColumbiaNational further offered to run the agreed-upon search terms and provide a hit report for each term, and to run the disputed terms against the remaining data and provide a supplemental hit report. ColumbiaNational also disclosed that Mr. Tehan was the only custodian who regularly texted Brandon Chasen and that Mr. Tehan's phone was configured to retain messages for only 30 days, so the phone had "automatically and permanently erased" older messages. ColumbiaNational, however, conditioned its production on two

requirements: it demanded that the requesting parties reimburse its alleged compliance costs, and it insisted on a protective order before any production. Moreover, ColumbiaNational had not provided any hit report to support its claims of burden.

On September 24, 2026, the Interested Parties again asked ColumbiaNational to quantify the number of documents captured only by the disputed terms. A true and correct copy of that correspondence is attached hereto as **Exhibit 4**. They also requested policies governing business communications on personal devices and asked whether backup sources existed for Mr. Tehan's messages, because ColumbiaNational itself admitted his text messages contained regular communications with the Debtors. Ex. 3. With respect to ColumbiaNational's request for a protective order, to which the requesting parties had previously told ColumbiaNational at the initial meet and confer conference they would agree, the Requesting Parties sent ColumbiaNational a draft protective order for review and comment. A true and correct copy of that correspondence is attached hereto as **Exhibit 5**. The Requesting Parties also disputed that cost-shifting was warranted, given the significant fees ColumbiaNational earned from its relationship with the Debtor and its affiliates. As an alternative, they proposed that ColumbiaNational produce the documents now with all parties reserving their rights with respect to the requested reimbursement of costs.

ColumbiaNational did not respond. Counsel for the Interested Parties followed up for the next two weeks and even offered another status call. On October 8, 2026, ColumbiaNational stated that it would not produce the requested documents, run the disputed search terms, or generate the supplemental hit reports absent agreement on full cost reimbursement. A true and correct copy of that correspondence is attached hereto as **Exhibit 6**. And, although Columbia National had demanded a protective order and the requesting parties provided a draft of same for review and

comment, it stated that it was still "reviewing" the draft the Requesting Parties had circulated two weeks earlier.

On October 9, 2026, counsel for the Interested Parties advised ColumbiaNational that the parties were at an impasse. They noted that ColumbiaNational had refused to provide even a hit report that would allow the parties to assess the alleged burden of the requested searches. A true and correct copy of that correspondence is attached hereto as **Exhibit 7**. Because ColumbiaNational's October 8 response addressed only ColumbiaNational's own systems, the Interested Parties also asked ColumbiaNational to confirm by sworn statement whether Mr. Tehan maintains any personal backups of his mobile device communications, such as iCloud.

As of the date of this Motion, approximately four months after service of the Subpoena, ColumbiaNational has not produced a single document, including the loan files it offered to produce in July and offered again on September 1. As one final effort, the Requesting Parties offered to limit the scope of the search terms, which ColumbiaNational refused. A true and correct copy of that correspondence is attached hereto as **Exhibit 8**. ColumbiaNational also indicated that it would not provide any comments to the proposed protective order absent the requesting parties' agreement that it reimburse its costs of production. *Id.*

## II. Legal Standard

Bankruptcy Rule 2004 permits broad inquiry into a debtor's conduct, property, liabilities, and financial condition, as well as matters affecting administration of the estate. Fed. R. Bankr. P. 2004(b)(1). Although Rule 2004 does not require the inquiry to tie to specific allegations in a pending adversary proceeding or contested matter, the inquiry must be "relevant and reasonable." *In re Symington*, 209 B.R. 678, 684–85 (Bankr. D. Md. 1997). Once the examining party establishes good cause for the examination, the burden shifts to the objecting party to demonstrate

that the examination would be oppressive or burdensome. *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011). When a subpoena recipient objects to production, the requesting party may move for an order compelling production under Federal Rule of Civil Procedure 45(d)(2)(B)(i), which Bankruptcy Rule 9016 makes applicable. In determining whether to compel production, the court must consider applicable privileges and undue burden and must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance. Fed. R. Civ. P. 45(d)(2)(B)(ii), (d)(3)(A).

## III. Argument

ColumbiaNational raises three purported objections to the Requesting Parties' Rule 2004 document subpoenas. First, without providing any support, ColumbiaNational argues that production of the documents sought pursuant to the subpoenas is unduly burdensome and overly broad. Second, and relatedly, ColumbiaNational contends that the Requesting Parties must agree to reimburse it for its estimated $15,000-$20,000 in compliance costs before it will substantively engage in the discovery process or produce the documents requested. Finally, ColumbiaNational refuses to produce documents absent the entry of a protective order, yet ColumbiaNational did not propose a protective order and has failed to provide any comments to the draft provided to it by the Requesting Parties on September 24, 2026.

### A. ColumbiaNational has Failed to Establish an Undue Burden

In assessing undue burden, courts balance the requesting party's need for the information against the burdens of production, giving special weight to the subpoena recipient's nonparty status and considering the availability of alternative sources. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189–90 (4th Cir. 2019). The subpoena recipient asserting undue burden must substantiate that objection with specific facts establishing the nature and extent of the burden, ordinarily through affidavits or other reliable evidence. *Papanicolas v. Project Execution & Control Consulting, LLC*,

2015 WL 1242755, at *2 (D. Md. Mar. 17, 2015) (citing *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 498 (D. Md. 2000)). The analysis must rest on concrete facts rather than generalities or speculation. *Jordan*, 921 F.3d at 194. Conclusory assertions of burden and expense are insufficient to establish undue burden. *Tucker*, 191 F.R.D. at 498; *Papanicolas*, 2015 WL 1242755, at *2 (rejecting an undue-burden objection unsupported by affidavits or other reliable evidence demonstrating specific facts). Thus, even if a court finds overbreadth, it warrants narrowing a subpoena rather than quashing it entirely. *Jordan*, 921 F.3d at 190 n.4.

Here, the Requesting Parties have a substantial need for ColumbiaNational's records to investigate the Debtor's financial affairs and identify potential recoveries for creditors. ColumbiaNational's origination and servicing files are directly relevant to what financial and valuation information supported the Chasen financings, how ColumbiaNational evaluated that information, and how the resulting transactions affected the Debtor's assets, liabilities, and financial condition. Indeed, current estimates are that Debtor's liabilities exceed its assets by multiple hundreds of millions of dollars, largely as a result of financings obtained for Debtor by ColumbiaNational.

ColumbiaNational itself identified four employees responsible for originating the Chasen loans and acknowledged that one of them, Kevin Tehan, regularly communicated with Brandon Chasen by text message. **Ex. 3**. The requested records thus concern transactions in which ColumbiaNational directly participated and communications maintained by the employees who handled them. The requested emails and text messages also carry investigative value beyond the formal loan files. Internal communications can reveal ColumbiaNational's substantive involvement in Chasen's financings, how ColumbiaNational evaluated the financial information it received, whether its employees flagged discrepancies or concerns, and how ColumbiaNational

addressed them. Moreover, given that Debtor Brandon Chasen deleted his email account at the outset of the bankruptcy proceedings, the need for discovery from third parties, such as ColumbiaNational, with whom he regularly communicated is even more important and necessary.

Despite this backdrop, ColumbiaNational has failed to show any burden at all, let alone a burden sufficient to justify its wholesale refusal to produce. ColumbiaNational only attempts to establish a burden is by making conclusory and unsupported assertions that one exists. ColumbiaNational's own September 1 proposal identifies a practical starting point for production: (1) complete origination and servicing files, and (2) four email custodians, with a defined collection period, and proposed search terms (both agreed and disputed). **Ex. 3**. A month later, ColumbiaNational reversed course on that very proposal, refusing to produce the loan files, run the disputed searches, or generate the promised hit reports absent full cost reimbursement—without ever offering an affidavit, hit count, or other evidence to substantiate the burden it now claims. **Ex. 6**.

The Interested Parties have taken concrete steps to request information that would permit an informed assessment of burden. They jointly developed search terms with the Trustees, requested information identifying documents captured only by disputed terms, and supplied a proposed protective order. **Exs. 4–5**. ColumbiaNational nevertheless continued to condition its participation in that process (including providing the hit reports that would allow the parties to evaluate the alleged burden) and production on full agreement on reimbursement while leaving the proposed protective order under review. **Ex. 6**. The Interested Parties and Trustees have even offered to limit the scope of the search terms to reach agreement on scope, to which ColumbiaNational has summarily refused. **Ex. 8**.

Despite these accommodations, ColumbiaNational still offers nothing more than its bare assertion of burden, revealing the objection for what it is: an attempt to extract payment from the Interested Parties and Trustees rather than a genuine showing of burden. On this record, the Court should overrule ColumbiaNational's unsupported burden objection and compel production on a defined schedule, subject to appropriate confidentiality protections.

### B. ColumbiaNational's Production Costs are Not "Significant" Under Rule 45

ColumbiaNational refuses to produce the required documents until the Interested Parties and Trustees agree to cover a pre-determined production cost.

When determining whether the requesting party must cover production costs, Courts first look to whether the costs of production would be "significant." Fed. R. Civ. Pro. 45(c)(2)(B)(ii). Courts consider at least three factors when determining whether costs are "significant" under Rule 45, "(1) whether the nonparty has an actual interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs than can the requesting party; and (3) whether the litigation is of public importance." *In re Nat'l Realty Inv. Advisors, LLC*, No. 22-14539, 2023 WL 7402282, at *2 (Bankr. D.N.J. Nov. 8, 2023) (citing *James Wm. Moore*, 9 Moore's Federal Practice § 45.41[3]).

First, ColumbiaNational has an interest in the outcome of this bankruptcy given its deep involvement with the Debtor's business. ColumbiaNational originated and serviced hundreds of millions of dollars in loans for the Chasen properties at issue, assigning several employees—Kevin Tehan, Brett Parker, Tyler Harned, and Greg Dormitzer—to originate those loans, and at least one of those employees, Mr. Tehan, communicated directly and regularly with Brandon Chasen by text message. *See Behrend v. Comcast Corp.*, 248 F.R.D. 84, 87 (D. Mass. 2008); *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (holding a party was interested because of the role they



4896-6466-0440.3

played in the collapse of the creditor as their auditor) (citing *Tutor-Saliba Corp. v. United States*, 32 Fed. Cl. 609, 610 n.5 (1995) ("[subpoenaed party] was substantially involved in the underlying transaction and could have anticipated that the contract on which it was a subcontractor might, given its size, reasonably spawn some litigation, and discovery")).

ColumbiaNational's role in originating and servicing hundreds of millions of dollars in loans for the Chasen projects, its assignment of multiple employees to those transactions, and its regular, direct communications with Brandon Chasen made litigation and related discovery reasonably foreseeable. Like the nonparty in *Behrend*, ColumbiaNational participated substantially in the very transactions under examination and could reasonably anticipate that disputes concerning those transactions would require discovery of its records. *See Behrend*, 248 F.R.D. at 87. Its position also resembles that of the auditor in *First American*: ColumbiaNational's work gave it firsthand knowledge of the underlying financial dealings and access to records relevant to investigating them, while the requested discovery concerns its own performance of those services. *See First American*, 184 F.R.D. at 242–43. The magnitude of the financing and ColumbiaNational's continuing servicing responsibilities further support the fact that makes resulting litigation and discovery reasonably foreseeable. 32 Fed. Cl. at 610 n.5. These circumstances weigh against treating ColumbiaNational as a disinterested nonparty entitled to shift the full expense of producing records of its own involvement.

Second, ColumbiaNational can far more readily bear these costs than the Interested Parties. ColumbiaNational's financial ability to bear production costs is a significant factor in determining whether reimbursement is warranted. *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281 (N.D. Cal. 2017). Courts applying this principle have required substantial businesses to absorb comparable or greater expenses, particularly where the recipient benefited

from the underlying transactions or reimbursement would diminish funds available to creditors. *See, e.g.*, *Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*, 2018 WL 2981827, at *5 (E.D. Cal. June 14, 2018) (requiring a national insurance broker to bear approximately $15,000 in production costs based in part on commissions earned from the transactions at issue); *Sandoz Inc. v. United Therapeutics Corp.*, 2021 WL 1259667, at *3 (D.N.J. Apr. 6, 2021) (requiring a large company to bear approximately $45,000 in compliance costs where it failed to show the expense was significant relative to its size); *In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282, at *2–3 (Bankr. D.N.J. Nov. 8, 2023) (denying reimbursement of $93,645.72 where the recipient's financial records showed substantial resources and the requesting party represented unsecured creditors seeking to recover significant losses).

ColumbiaNational falls squarely within this line of authority. It reports on its website closing $10 billion in new loans since 2020 and servicing a $7.7 billion commercial mortgage portfolio. Based on the Interested Parties' current understanding, ColumbiaNational also earned millions of dollars in fees from its work with Debtor and its affiliates, directly benefited from the very transactions now under examination, and faces potential liability arising from those same transactions. ColumbiaNational's financial benefit from its dealings with Debtor, the scale of its operations, and its failure to substantiate the significance of the estimated $15,000–$20,000 expense all weigh against shifting those costs to the estates and, ultimately, their creditors.

Third, these proceedings implicate matters of public importance. In *Nat'l Realty*, the court held that a liquidation trust's investigation of fraudulent transfers favored requiring the subpoena recipient to bear its own Rule 2004 compliance costs, explaining that "[t]here is great public importance in deterring and preventing fraud." 2023 WL 7402282, at *3. Here, the requested loan files and related communications will assist in investigating Debtor's financial affairs, evaluating

potential misconduct, and identifying potential recoveries for creditors. The collapse of the Chasen businesses and the resulting bankruptcies have generated sustained coverage concerning their effects throughout Baltimore. The Baltimore Banner has reported deteriorating development sites, unresolved tenant complaints, nonpayment claims by more than a dozen contractors and businesses, and substantial unpaid municipal water bills. Reporting has also addressed allegedly inaccurate appraisals supporting more than $210 million in loans and questions bankruptcy examinations have raised concerning intercompany transfers and allegedly falsified bank statements. These reported consequences for tenants, local businesses, neighborhoods, and municipal revenues reinforce the public interest in investigating Debtor's financial affairs and potential misconduct. The requested loan files and communications will advance that investigation and the identification of potential recoveries for creditors. This factor therefore weighs against shifting ColumbiaNational's compliance costs to the estates.

### C. ColumbiaNational Cannot Withhold Production Based on a Protective Order it has Refused to Finalize

Finally, ColumbiaNational argues that it will not produce any records without a protective order, even though the Requesting Parties remained more than willing to enter into one.

A bankruptcy court may limit a Rule 2004 examination through a protective order upon a showing of good cause. *Symington*, 209 B.R. at 688–90. The party seeking protection bears the burden of establishing, through specific factual support rather than generalized or conclusory assertions, that the information qualifies for protection and that disclosure would cause harm. *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998); *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124–25 (D. Md. 2009). If the party makes that showing, the requesting party must demonstrate that its need for the information outweighs the harm of disclosure, and any protection must balance the recipient's legitimate confidentiality interests against the examiner's need to use the

information in its investigation. *Wilson*, 149 F.3d at 252. When the parties cannot agree, the court may resolve the subpoena objections, determine appropriate protective terms, and order production; the recipient's consent is not a prerequisite to that relief. Fed. R. Civ. P. 45(d)(2)(B); Fed. R. Bankr. P. 9016.

Here, the Interested Parties and Trustees attempted to satisfy that precondition by sending ColumbiaNational a draft protective order, which ColumbiaNational left under review indefinitely without substantive engagement. **Exs. 5–6**. The Interested Parties remain willing to enter a protective order addressing ColumbiaNational's stated confidentiality concerns and are still awaiting its response to that draft. To the extent ColumbiaNational continues to invoke the absence of a protective order as a basis for withholding production, that position is unfounded: ColumbiaNational itself created the precondition, the Interested Parties satisfied it, and ColumbiaNational alone has failed to act. ColumbiaNational cannot rely on its own delay to justify its continued refusal to produce documents.

In sum, ColumbiaNational has not substantiated burden, has not shown its costs are significant, and has not identified any unresolved confidentiality concern — it has simply refused to produce documents it already agreed to produce, on preconditions of its own making that the Interested Parties and Trustees have each satisfied. Nothing in the record justifies further delay.

## IV. Local Rule 9013-2 Statement

Pursuant to Local Rule 9013-2, the Interested Parties state that no memorandum of fact and law will be filed and that they will rely solely upon this motion.

## V. Conclusion

For the foregoing reasons, the Interested Parties respectfully request that this Court grant the Motion, overrule ColumbiaNational's unsupported objections, and enter an Order directing

ColumbiaNational to: (1) produce all responsive, nonprivileged origination and servicing files within fourteen days; (2) complete searches using the agreed-upon terms for the four custodians and collection period identified in its reduced October 12 proposal, and produce responsive, nonprivileged documents on a rolling basis, with that production completed within thirty days; (3) provide hit reports for the agreed and disputed search terms within fourteen days, including the number of documents captured only by the disputed terms; and (4) provide a privilege log identifying any responsive documents withheld on grounds of privilege. The Interested Parties further request that the Court enter the proposed protective order, with any modifications the Court finds appropriate, and establish a prompt procedure for resolving any remaining disputes concerning the scope of the searches.

The Interested Parties also request that the Court deny ColumbiaNational's demand for full reimbursement on the present record. Alternatively, the Court should direct production under the foregoing schedule while reserving determination of any properly supported request to allocate reasonable and necessary compliance expenses, subject to the protections required by Rule 45(d)(2)(B)(ii). The Interested Parties further request such other relief as the Court deems just and proper.

Dated: October 26, 2026

Respectfully submitted,

*/s/ Aaron L. Casagrande*

Aaron L. Casagrande (Bar No. 28518)
ICE MILLER LLP
100 Light Street, Suite 2700
Baltimore, Maryland 21202
Phone: (410) 951-5874
Aaron.Casagrande@IceMiller.com

*Counsel for Interested Parties*

## CERTIFICATE OF COMPLIANCE WITH MD. L. Bankr. R. 7026-1(f)

I hereby certify that counsel for the Interested Parties and counsel for the Trustees conferred with counsel for ColumbiaNational and made good-faith efforts to resolve the disputes presented in the accompanying Motion without Court intervention.

On July 23, 2026, and July 29, 2026, counsel for the Interested Parties, the Trustees and ColumbiaNational participated in a videoconference concerning ColumbiaNational's responses to the Rule 2004 subpoenas and coordination of the requesting parties' document requests. The discussion addressed production of ColumbiaNational's files and the Interested Parties' request for responsive emails and text messages.

Counsel continued their efforts through subsequent correspondence concerning custodians, search terms, hit reports, compliance costs, and confidentiality protections. On September 24, 2026, the Interested Parties provided a proposed protective order and proposed that ColumbiaNational proceed with production while reserving its right to seek reimbursement. ColumbiaNational's October 8, 2026, response continued to condition production and supplemental search reports on full reimbursement. On October 9, 2026, counsel for the Interested Parties advised ColumbiaNational's counsel that the parties were at an impasse.

The unresolved issues concern ColumbiaNational's withholding of responsive documents, the scope and testing of electronic searches, its demand for reimbursement of compliance costs, and the confidentiality protections governing production. Despite these efforts, counsel have been unable to resolve the disputes presented in the Motion.

/s/ Aaron L. Casagrande
Aaron L. Casagrande

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of October, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the *Motion to Compel Columbia National's Production of Documents Pursuant to Bankruptcy Rule 2004* will be served electronically by the Court's CM/ECF system on the following:

| | |
|---|---|
| • Brian E. Barkley | bbarkley@barkenlaw.com |
| • Hugh M. (UST) Bernstein | hugh.m.bernstein@usdoj.gov |
| • Jill D. Caravaggio | jill@jill-lawoffice.net, paralegal@jill-lawoffice.net |
| • Aaron L. Casagrande | Aaron.casagrande@Icemiller.com |
| • Darrell William Clark | darrell.clark@stinson.com, catherine.scott@stinson.com |
| • Alan D. Eisler | aeisler@e-hlegal.com, alaneisler@gmail.com |
| • David V. Fontana | dfont@gebsmith.com |
| • Jason J. Giguere | jgiguere@zwickerpc.com, bknotices@zwickerpc.com |
| • Richard Marc Goldberg | rmg@shapirosher.com, ejd@shapirosher.com |
| • Zvi Guttman | zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com,MD55@ecfcbis.com |
| • Jeffery Thomas Martin | jeff@martinlawgroup.com, Martin.JefferyT.B119228@notify.bestcase.com; brittany@martinlawgroup.com; Diana@martinlawgroup.com |
| • Frank J. Mastro | fmastro@schlosslaw.com |
| • Stephen A. Metz | smetz@offitkurman.com |
| • Tracey Michelle Ohm | tracey.ohm@stinson.com, porsche.barnes@stinson.com |
| • Jeffrey M. Orenstein | jorenstein@wolawgroup.com |
| • John E Reid | jack@martinlawgroup.com, brittany@martinlawgroup.com; Diana@martinlawgroup.com |
| • Roger Schlossberg | bkcreditor@schlosslaw.com, jkemmerer@schlosslaw.com |
| • Roger Schlossberg | trustee@schlosslaw.com, MD20@ecfcbis.com |
| • Robert G. Shuster | rob@shusterlaw.com, courts@shusterlaw.com |
| • Brent C. Strickland | bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com; brent-strickland-3227@ecf.pacerpro.com |
| • US Trustee - Baltimore | USTPRegion04.BA.ECF@USDOJ.GOV |
| • Maurice Belmont VerStandig | mac@mbvesq.com; |

lisa@mbvesq.com; mahlon@dcbankruptcy.com; mac@dcbankruptcy.com; verstandig.mauricer104982@notify.bestcase.com; verstandiglaw@recap.email

- Shawn C Whittaker shawn@whittaker-law.com

I hereby further certify that on the 26th day of October, 2026, a copy of the *Motion to Compel Columbia National's Production of Documents Pursuant to Bankruptcy Rule 2004* was also mailed first class mail, postage prepaid to:

Chasen Construction LLC
Attn: Brandon Chasen
12 W. Montgomery St.
Baltimore, Maryland 21230

Michael A. Collyard
Greenberg Traurig, LLP.
90 South Seventh Street
Suite 3500
Minneapolis, MN 55402

Michael B. Fisco
Greenberg Traurig, LLP
90 South Seventh Street
Suite 3500
Minneapolis, MN 55402

Peter C. Ihrig
Greenberg Traurig, LLP.
90 South Seventh Street
Suite 3500
Minneapolis, MN 55402

Peter D. Kiesbelbach
Greenberg Traurig, LLP
90 South Seventh Street
Suite 3500
Minneapolis, MN 55402

Peter D. Kieselbach
Greenberg Traurig, LLP
90 South 7th Street
Suite 3500
Minneapolis, MN 55402

Catherine Lawrence
Lawrence Law, LLC
323 W. Camden Street
Suite 700
Baltimore, MD 21201

Shepherd Electric Co., Incorporated
c/o Douglas H. Seitz, Esq.
1 Olympic Place, Suite 800
Towson, MD 21204

Brian Moffett
Emily Devan
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202

*/s/ Aaron Casagrande*
Aaron Casagrande