# EXHIBIT 2

MILES & STOCKBRIDGE

**Brian L. Moffet**
410-385-3656
bmoffet@milesstockbridge.com

June 16, 2026

***VIA EMAIL AND FIRST CLASS MAIL***
Aaron Casagrande, Esquire
Aaron.Casagrande@icemiller.com
Ice Miller LLP
100 Light Street, Suite 2700
Baltimore, Maryland 21202

**Re:** ***In re: Chason Construction LLC***
**Bankr. No. 25-12356-NVA (the "Bankruptcy")**
**Columbia National Real Estate Finance, LLC's Objections to**
**Subpoena For Rule 2004 Examination**

Dear Aaron,

I represent non-party Columbia National Real Estate Finance, LLC ("**CN**") with respect to the Subpoena for Rule 2004 Examination (the "**Subpoena**") served by your office in the above-referenced matter on June 2, 2026. This letter sets forth CN's written objections to the Subpoena pursuant to Federal Rule of Civil Procedure 45(d)(2)(B) and (e)(1)(D), as incorporated by Federal Rule of Bankruptcy Procedure 9016.

*First,* CN objects to the Subpoena because it does not allow a reasonable time for compliance. CN received service on June 2, 2026. The Subpoena requires CN to search for, collect, and produce 14 categories of documents concerning more than 135 entities or individuals over a period exceeding six (6) years, all within 30 days. Given the nature and breadth of the requests, the Subpoena imposes an undue and unreasonable burden on CN.

*Second*, CN objects to the Subpoena in its entirety because it is overbroad and unduly burdensome. Rule 2004 examinations are limited to matters concerning the acts, conduct, property, liabilities, and financial affairs of the debtor in the cases in which the examination is authorized. Yet the Subpoena is not so limited. Instead, it seeks "[a]ll documents and communications" responsive to 14 broad categories spanning more than six (6) years, with the only purported "limitation" being that the document refers or relates to any of the more than 135 individuals and entities included in the Subpoena's definitions of "Debtor," "Insiders," "Affiliated Entity," or "Individual." The most egregious example of this overreach is Request No. 1, which seeks production of "[a]ll documents and communications referring to or relating to the Debtor, Insiders, and/or an Affiliated Entity or Individual" without any limitation as to subject matter or participants. This request is so broad that it renders the other 13 requests superfluous.

Despite its characterization as being tantamount to a 'fishing examination,' a Rule 2004 examination must be both relevant and reasonable." *In re Symington*, 209 B.R. 678, 684 (Bankr.

D. Md. 1997) (internal quotations and citation omitted). "Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined." *In re Coffee Cupboard, Inc*., 128 B.R. 509, 514 (Bankr. E.D.N.Y.1991). Similarly, "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018) (quoting *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (collecting cases)). "Thus the scope of a Rule 2004 examination is at least as broad as discovery under the Federal Rules of Civil Procedure and subject to the same limitations." *In re Symington*, 209 B.R. at 685.

Consistent with these limitations, Rule 2004 examinations should not be "disruptive or costly." *In re Lufkin*, 255 B.R. 204, 209 (Bankr. E.D. Tenn. 2000). Specifically, an "examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989); see also *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994), *amended,* , 1994 WL 731628 (Bankr. S.D. Ohio Aug. 2, 1994).

As presently drafted, the Subpoena seeks more than six years' worth of documents containing any mention of the more than 135 entities or individuals defined as a "Debtor," "Insiders," "Affiliated Entity," or "Individual." The sheer volume of material potentially implicated outweighs any likely benefit and is disproportionate to the needs of the case. Moreover, compiling such voluminous materials would require a substantial investment of time and effort by a non-party with no interest in the underlying bankruptcies. CN has not yet completed a detailed analysis to quantify the burden of compliance, but it would plainly be monumental.

Further, the Subpoena is so broad that it encompasses materials and/or information constituting attorney-client communications. For such privileged documents, the Subpoena requires CN to provide a list "with the following information: date, author or sender, all addresses or recipients, type (*e.g.,* letter, memorandum, telegram, chart, photograph, etc.), subject matter of the document, the basis on which a privilege is claimed, and the paragraph or paragraphs of this request to which the document corresponds." If any claim of privilege pertains to only a portion of a document, CN is required to redact the privileged information and produce the remainder. CN should not be burdened with such an exercise merely because the Subpoena is poorly drafted.

*Third,* CN objects to the Subpoena to the extent it seeks confidential and/or commercially sensitive business information belonging to CN or to third parties with whom CN does business. No confidentiality agreement or protective order has been entered in either bankruptcy that would adequately safeguard such information from disclosure. Bankruptcy Rule 9016 adopts Federal Rule of Civil Procedure 45 (the rule governing subpoenas) for purposes of cases under the Bankruptcy Code. In turn, Rule 45 empowers courts to modify or quash a subpoena that "subjects a person to [an] undue burden" or "requires disclosure of a trade secret or other confidential research, development, or commercial information [.]" Fed. R. Civ. P. 45(c)(3)(A)(iv) and Fed. R. Civ. P. 45(c)(3)(B)(i). The Court's authority to issue orders protecting confidential material from discovery or from disclosure by a discovering party extends to Rule 2004 examinations. *Symington*, 209 B.R. at 687-88 (holding that "the combination of history and logic justifies the

MILES & STOCKBRIDGE

exercise of discretion ... to limit Rule 2004 examinations whenever 'good cause' is shown"). As discussed above, the Subpoena seeks to compel CN to disclose a burdensome volume of confidential and proprietary information. Accordingly, CN will not produce confidential or commercially sensitive materials absent appropriate confidentiality protections imposed by the court.

*Fourth*, CN objects to the Subpoena because each of the 14 document requests seeks production of "ESI" from sources that are not reasonably accessible in light of the burden and cost required to identify, restore, review, and produce potentially responsive materials. To the extent the Subpoena seeks ESI from such sources, compliance would be unduly burdensome and disproportionate to the needs of the case.

*Fifth*, CN objects to the Subpoena because the definitions of "Affiliated Entity" and "Individual" are vague and ambiguous. Included within those definitions are the "officers, directors, employees, agents and representatives" of each of the 126 entities listed on Appendix A. But the identities of those "officers, directors, employees, agents and representatives" are not identified anywhere in the Subpoena. As a result, CN must either conduct its own research to identify these individuals in order to determine whether a document is responsive or speculate in responding to the Subpoena. CN is willing to do neither.

As to specific requests, Request No. 11 is vague and ambiguous in its use of the term "due diligence." Unlike "Financial Records," the term "due diligence" is not defined in the Subpoena, and CN does not understand its intended meaning or use. Responding to Request No. 11 would require CN to speculate, and CN declines to do so. CN has a similar objection to Request No. 12, which requests documents "relating to any *concerns* raised by any person regarding whether the Debtor, Insiders, and/or an Affiliated Entity or Individual were involved in *fraud* or other *wrongdoing*." (emphasis added). The terms "concern" and "wrongdoing" are not defined in the Subpoena, and CN does not understand their intended meaning or use. The term "fraud" is problematic but for a different reason: it would require CN to make a legal determination in order to respond to Request No. 12, and CN is not in a position to offer legal opinions in connection with responding to the Subpoena.

Notwithstanding these written objections to the Subpoena, CN has taken reasonable steps to preserve any data that may be responsive to the Subpoena and will continue to do so pending resolution of these objections. CN makes these objections without waiving its right to object to any additional subpoenas involving or relating to the subject matter of the responses herein. Furthermore, all objections and responses are made without waiver and with preservation of: (a) all questions as to competency, relevancy, materiality, privilege, and admissibility of the responses and documents, and the subject matter thereof, for any purpose and in any further proceeding in this action (including the trial of this action) and in any other action or matter; (b) the right to object to the use of any such responses or documents, or the subject matter thereof, on any ground in any further proceeding in this action (including the trial of this action) and in any other action or matter; (c) the right to object on any ground at any time to a demand or request for further responses or documents to these or any other discovery requests related to the subject

matter of the information requested herein; and (d) the right at any time to review, correct, add to, supplement, or clarify any of the responses contained herein.

If you would like to discuss these objections or whether the requests can be narrowed to avoid undue burden on CN, please give me a call at your convenience.

Very truly yours,

*/s/ Brian L. Moffet*

Brian L. Moffet