IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| In re: | Case No. 25-12356 -NVA |
| Chasen Construction, LLC, | Chapter 11 |
| Debtor. | **Trustee's Motion to Compel Columbia National to Produce Documents in Response to Bankruptcy Rule 2004 Subpoena** |

Roger Schlossberg, as chapter 11 trustee (the "Trustee") of the bankruptcy estate of Chasen Construction, LLC, moves the Court for an order compelling Columbia National Real Estate Finance, LLC ("Columbia National" or "Columbia") to produce documents responsive to the Rule 2004 subpoena served pursuant to this Court's May 27, 2026 Order. Dkt. 194. This Motion is brought under the Federal Rules of Bankruptcy Procedure 2004 and 9016, Local Rules of Bankruptcy Procedure 2004-1 and 7026-1, and Federal Rule of Civil Procedure 45(d)(2)(B)(i).

## Introduction

This is a simple request to compel Columbia National to produce documents that it acknowledges are relevant to the Trustee's ongoing efforts to investigate a massive fraud, two estates and multiple non-debtor entities.

Brandon Chasen used his Chasen Construction company to orchestrate a $335 million fraud through various real estate transactions. Columbia was Mr. Chasen's key business partner who brought those transactions to Chasen, brokered *hundreds of*

*millions* of dollars in loans on them, and made *millions* of dollars doing so. Many of those loans defaulted and are at the heart of the claims in these bankruptcy cases.

*The Trustee's investigation into the fraud and Columbia's involvement in the deals*: To give the Trustee's investigation context, Mr. Chasen's scheme had many layers. He was the majority owner and operator of Chasen Construction. He also owned and operated additional affiliated entities, including special purpose entities for each real estate transaction. In fact, to date, the chapter 11 and 7 trustees have identified more than 100 limited liability companies in which Chasen held an ownership or operating interest (collectively, the "Chasen Entities").

The Trustee has worked diligently with Zvi Guttman, as the trustee for Mr. Chasen's individual chapter 7 case (collectively with the Trustee, the "Trustees") for more than a year to understand the fraudulent scheme and how the money flowed through the Chasen Entities. In fact, the Trustees' professionals have analyzed 92 bank accounts for the period March 1, 2022 through March 31, 2026, comprising approximately 43,000 transactions, including 7,200 internal transfers among the Chasen Entities.

The Trustees' extensive investigation has revealed that Chasen used his entities to invest in the real estate deals and then comingled and transferred investor money through accounts at United Bank to pay off old loans and secure new loans—all to fund his exorbitant lifestyle of yachts, private jets, and Ferraris at the expense of others. And Columbia was front and center to Chasen's scheme, willingly bringing the lending deals to Chasen and brokering the real estate transactions.

Brandon Chasen and his business partners duped people to invest in a business model that was purportedly risk-free and left nothing to chance. The pitch was that Chasen would use his entities to buy multi-unit buildings in Baltimore at significant discounts, rehab them into luxury apartments, and then rent them out to guaranteed renters at increased rates. To do this, Chasen would secure a loan to buy the discounted property and—at the same time—a much bigger loan to refinance the property based on the purported increased value of the property after the rehab work was completed. In theory, Chasen was supposed to then use that refinancing to pay off the original loan (after completing the rehab) and then earn profits from the increased rents that would be used to pay off the refinanced loan.

Chasen's scheme relied on *critical* brokerage and banking relationships that allowed him to have mechanics for these transactions all locked-in and prepackaged from the start. But almost *none* of what Chasen claimed actually occurred—Chasen didn't actually rehab the units or have the renters to justify the increased property values. Instead, the fraudulent scheme was built on faulty appraisals and brokered deals where Columbia, and its Chasen relationship broker (Kevin Tehan), kept the deals (and significant commissions) flowing in.

*Columbia's refusal to produce or substantiate its alleged "burden":* Columbia doesn't dispute that it should produce all of the loan files for the transactions or Kevin Tehan's and other Columbia employee emails. Columbia's push back is *only* that it doesn't want to pay the $15,000 in costs it asserts will be incurred in complying with the Rule 2004 demand. But $15,000 is hardly burdensome to a brokerage firm that closes *billions of*

*dollars* in loans and made millions of dollars in fees. In any case, the cost of compliance is *not* a justified reason to refuse to produce this essential information given how embedded Columbia was in Chasen's business and how many millions of dollars Columbia made off the very transactions that supported Chasen's fraudulent scheme.

The Trustee exhausted his efforts for *four* months trying to get Columbia to produce this critical information. And although the Trustee made repeated suggestions to Columbia for how it could reduce its purported expense, Columbia has refused to provide the Trustee with information that supports those expenses or that shows its "burden" cannot be reduced by implementing the Trustee's suggestions—let alone that $15,000 would have any impact on Columbia. On top of that, Columbia has also refused to simply produce the information under a reservation of rights with respect to its requested reimbursement of costs that could be resolved at a later time. The Trustee therefore had no choice but to bring this motion at this time to seek the Court's assistance.

This bankruptcy estate has no assets to pay for Columbia's production expenses. Even if it did, the Trustee should not have to pay for compliance with a Rule 2004 request about the core lending relationship underlying the fraudulent scheme. The Trustee therefore respectfully requests that Columbia National's objections be overruled and that Columbia be ordered to produce the relevant documents so the Trustee can complete his investigation.

**Argument**

The Trustee's motion should be granted for three simple reasons:

- Columbia was Chasen's key business partner and its documents are highly relevant to the Trustee's investigation into the Chasen fraud;
- Columbia made millions off these deals and can undoubtedly afford to pay $15,000 to provide the Trustee his requested information; and
- The Trustee doesn't have the money to pay Columbia's costs and would be severely prejudiced without this information.

## I. Columbia was Chasen's key brokerage partner and its documents are critically relevant to the Trustee's investigation into the Chasen fraud.

Columbia National was essential to the Chasen real estate transactions and investments that were the foundation of his fraud. Columbia brought those transactions together and it brokered over $300 million in refinancing loans that Chasen needed to carry out his fraud.

In fact, Columbia served as the broker for 43 mortgage refinancings related to Chasen Construction.[1] And Columbia broker Kevin Tehan in particular, was vital to those transactions—delivering deal-after-deal, participating in Chasen Construction's business decision making process, issuing letters of recommendation for Chasen Construction to show to prospective lenders, arranging for and interfacing with the commercial real estate firm that appraised each Chasen property, and holding standing dinner meetings and attending golfing and professional events across the country with Chasen Construction's principals.[2]

---

[1] Declaration of Peter C. Ihrig in Support of Trustee's Motion to Compel Columbia National to Produce Documents in Response to Bankruptcy Rule 2004 Subpoena ("Ihrig Decl.").

[2] Ihrig Decl. ¶¶ 6-10.

Columbia's documents will contain all the necessary loan files that need to be looked at and important communications and emails that Columbia (and Mr. Tehan) had internally and with Chasen about all of these transactions including what representations were made and why, what decisions were made and why, how the money was used for each of the deals, and what information was relied on to complete these now defaulted transactions, and who had knowledge of, and assisted with, the actions that supported the fraud.

Columbia's documents are therefore uniquely and highly relevant such that any burden associated with their production can't be considered "undue."

## II. The Trustee's document requests are not unduly burdensome to Columbia and Columbia has provided no basis to claim they are.

In evaluating the burden of production under Rule 45(d), the ultimate question is "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient."[3] Courts additionally weigh the value of the discovery against the special weight afforded to nonparties and the availability of documents from alternative sources.[4] Burden and expense must be grounded in "specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence."[5] And

[3] *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).

[4] *Id.*

[5] *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 498 (D. Md. 2000).

the party asserting an undue burden is responsible for establishing that burden.[6] Columbia National hasn't done so.

Columbia asserts that the Trustee's subpoena would require combing through more than 100 gigabytes of data spanning 105 entities over an eight-year period. But this doesn't make Columbia's burden "undue," and instead, only highlights the scale of Columbia National's involvement with Chasen Construction and the Chasen Entities as discussed earlier.[7]

Columbia's burden assertion completely ignores that it has repeatedly refused the Trustee's offers to help reduce its purported burden. For months, the Trustee has been has made suggestions to help minimize the amount of documents to be produced, but Columbia has refused to provide evidence substantiating its objections that would allow the Trustee to evaluate them. For example, Columbia objected to the Trustee's search terms as unduly burdensome, but refused to provide a "hit report" showing how many unique documents each search term returned on the grounds that even generating that report exposed Columbia to "very significant costs."[8]

---

[6] *Strike 3 Holdings, LLC v. Doe*, No. 24-3143, 2025 WL 1370654 (D. Md. May 12, 2025); *see also Jordan*, 921 F.3d at 189 n.2 (noting that the subpoena recipient asserting the objection bears the burdens of proof and persuasion as to undue burden).

[7] Ihrig Decl. ¶¶ 12–13, Exs. B, C; *see also* Mot. to Compel Columbia National's Produc. of Docs. in Resp. to Bankruptcy Rule 2004 Subpoena ("Honig Mot. to Compel"), Ex. 6, Dkt. 279-6 (Oct. 26, 2026) (providing a prior email exchange on October 6–8, 2026, with Columbia National).

[8] Honig Mot. to Compel, Ex. 6; *see also* Honig Mot. to Compel at 8 (detailing sequence of negotiations and terms).

When pressed on why it could not generate a hit list, Columbia merely said that it would be required to "collect over 100 GB of data, download that data from its server, import it into Relativity, and then run the search terms to generate a hit list [and] continue to pay to host the data."[9] Columbia's position is apparently that creating a routine discovery database qualifies as a "significant expense" and that it has to continue to incur costs even though its document production obligation ends upon production.

Columbia's only "burden" appears to be that it thinks it will cost $15,000–$20,000 to produce its documents, but Columbia provides no basis for this number or any explanation why it would have to "continue to pay to host the data" after it has produced it. Columbia has therefore provided no way to evaluate the burden it claims against the unquestionably high value of the documents it possesses, and Columbia should therefore produce the documents.

**III. The sum of $15,000 is not a "significant expense" for Columbia and reimbursement by the bankruptcy estate is not warranted.**

Columbia also refuses to produce the required documents because it claims the Subpoena imposes a "significant expense" that should be reimbursed by the bankruptcy estate. This objection should also be overruled.

The proper standard for determining what constitutes a "significant expense" isn't defined by Rule 45(d)(2)(B)(ii). Some courts consider three factors to determine if

[9] Ihrig Decl., Ex. C.

costs are "significant" for the subpoenaed recipient: "(1) whether the nonparty has an actual interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs than the requesting party; and (3) whether the litigation is of public importance."[10] Other courts have applied a two-factor test, evaluating whether there is an expense and whether it is significant.[11] However, even where the two-factor test is applied, courts have indicated that "a court might take into account the financial ability of the non-party to bear some costs."[12] "This consideration makes practical sense—an expense might be 'significant,' for instance, to a small family-run business [(or an assetless bankruptcy estate)], while being 'insignificant' to a global financial institution [(or a nationwide commercial mortgage broker)]."[13] Evaluating what is "significant" is therefore a relative measure.

**A. Columbia National is in a far better financial position to bear the costs of production than the Trustee is.**

Both the three-factor and the two-factor tests involve analyzing the subpoena recipient's ability to pay. And regardless of the test applied, Columbia is able to pay the costs it alleges are significant. The $15,000-$20,000 in costs Columbia complains about are minimal to Columbia. And far from being "significant," those costs constitutes

---

[10] *In re Nat'l Realty Inv. Advisors, LLC*, No. 22-14539, 2023 WL 7402282, at *2 (Bankr. D.N.J. Nov. 8, 2023) (citations omitted).

[11] *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).

[12] *Id.*

[13] *U.S. v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) (relying on *Linder*, 251 F.3d at 182).

approximately 0.5% of the $3 million in fees Columbia was paid on Chasen-related properties alone. Additionally, based on Columbia National's claims that it manages and services a $7.7 *billion* commercial mortgage loan portfolio and has closed $10 *billion* in new loans since 2020, this $15,000-$20,000 is likely an even smaller fraction of Columbia National's overall assets and revenues.[14] And it's undisputable that Columbia National is in a significantly better position to pay than the bankruptcy estate, which currently has no funds to pay these expenses.

**B. Columbia National isn't a traditionally disinterested party.**

Columbia National also isn't a traditional disinterested nonparty because it played a central role in Chasen Construction's business and the very loans that led to this bankruptcy. As explained above, and for the same reasons Columbia National's documents are so critical to the Trustee's investigation, Columbia National was deeply involved throughout the lifecycle of the properties Chasen bought and used as the basis for his scheme. Indeed, Columbia not only helped originate over $300 million in refinancing loans for those properties, and earned over $3 million in fees from those loans, but also identified many of those properties for Chasen and arranged for each of those properties to be appraised (which was required for any refinancing to close).

Additionally, Columbia National employee Kevin Tehan had extensive personal and professional dealings with Brandon Chasen, Chasen's partner Paul Davis, and

---

[14] *Columbia National Real Estate Finance, LLC, Home Page*, https://cnref.com/ (last visited Nov. 6, 2026).

another key business partner named Devin McCreery, who handled the Chasen relationship for United Bank (which Chasen used for almost all business and personal banking). These relations were so deep that the foursome not only had extensive business communications with each other, they dined together, traveled together and frequently played golf together. Mr. Tehan even tried to help Chasen buy an island in the Bahamas.[15] Given Columbia National's deep relationship with Brandon Chasen, Chasen Construction, and the Chasen Entities, Columbia National is the furthest thing from the traditional nonparty who is protected from "significant expense" under Rule 45(d)(2)(B)(ii).[16]

**C. This bankruptcy is a case of significant public importance.**

This fraud is incredibly important to the Baltimore community. Chasen Construction's collapse has been consistently covered by news outlets throughout Baltimore and has garnered significant public attention.[17] The Baltimore Banner, in particular, has covered the issues with Chasen Construction since at least April 2025, including tenant complaints, unpaid bills, and other community issues stemming from their deteriorating properties in the Fells Point area, where, according to the Banner,

---

[15] Ihrig Decl. ¶ 11.

[16] *See In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282, at *2.

[17] *See, e.g.*, Hallie Miller, Dylan Segelbaum, & Greg Morton, *Developer Chasen Cos. is unraveling – and leaving a mess across Baltimore*, THE BALTIMORE BANNER (Apr. 27, 2025, at 5:30 a.m. EST), https://www.thebanner.com/community/housing/chasen-construction-baltimore-bankruptcy-GMHB3UFFOBDZ5PF6KJ7GKTNVLU/.

Chasen Construction once owned about 10% of all multifamily properties.[18] A bankruptcy of this size in this region, particularly given the impacts of the real estate on the local community, is therefore undoubtedly a case of public importance that requires Columbia to produce its information.

**Conclusion**

Columbia National is not some random disinterested third party who somehow got dragged into a bankruptcy—not even close. Columbia National was one of Brandon Chasen's most important business partners who had complete involvement in the foundation of a massive $335 million fraud run out of Maryland. Columbia's documents are indisputably necessary to the Trustee's ability to investigate the Chasen fraud, the circumstances that led to Chasen Construction's bankruptcy, and potential claims that the Trustee might have against third parties. Columbia should not be able to continue to use its $15,000 argument from preventing the Trustee to complete his investigation. The Trustee therefore respectfully requests that the Court grant this Motion and enter an order directing Columbia National to comply with the Subpoena, overruling Columbia's undue burden objection, and denying Columbia National's request for full reimbursement pursuant to Rule 45(d)(2)(B)(ii).

**Local Rule 9013-2 Statement**

Pursuant to Local Rule 9013-2, the Trustee states that no memorandum of law will be filed and that he will rely solely upon this Motion.

---

[18] *Id.*

Dated: November 6, 2026

By: */s/ Frank J. Mastro*

**Schlossberg | Mastro**
Frank J. Mastro (D. Md. Bar No. 24679)
P.O. Box 2067
Hagerstown, MD 21742
Telephone: 301.739.8610
fmastro@schlosslaw.com

**Greenberg Traurig, LLP**
Michael B. Fisco – admitted *pro hac vice*
Michael A. Collyard – admitted *pro hac vice*
Peter D. Kieselbach – admitted *pro hac vice*
Peter C. Ihrig – admitted *pro hac vice*
Robert B. Kearney – D. Md. Bar No. 31830
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Telephone: 612.259.9700
fiscom@gtlaw.com
michael.collyard@gtlaw.com
kieselbachp@gtlaw.com
peter.ihrig@gtlaw.com
robert.kearney@gtlaw.com

*Counsel for the Trustee*

**Certificate of Compliance with Md. L. Bankr. R. 7026-1(f)**

I hereby certify that counsel for the Trustee conferred with counsel for Columbia National and made good-faith efforts to resolve the disputes presented in the Motion without Court intervention.

On July 23, 2026, and July 29, 2026, counsel for the Trustees, with counsel for the Family Pension Corp. 401k Plan, Four Kids Investment Fund, LLC, Jonathan Honig, as trustee for the Renee Honig 2019 Irrevocable Trust Agreement U/A DTD 07/09/2019, and Jacob Honig (collectively, but excluding the Trustees, the "Interested Parties"), participated in a videoconference with Columbia National regarding Columbia National's responses to the Rule 2004 subpoenas and coordination of the requesting parties' document requests. The discussion addressed production of Columbia National's files and the Trustee's requests for responsive emails and text messages.

Counsel for the Trustees continued their efforts through subsequent correspondence concerning custodians, search terms, hit reports, compliance costs, and confidentiality protections. On September 24, 2026, counsel for the Interested Parties, with the Trustees agreement, provided a proposed protective order and proposed that Columbia National proceed with production while reserving its right to seek reimbursement. Columbia National responded on October 8, 2026, and indicated that it would continue to condition production and supplemental search reports on full reimbursement. On October 12, 2026, the Trustees proposed narrowing search terms, as long as Columbia National could provide a hit report to evaluate the burden, and indicated it disagreed with Columbia National's assertion of significant expense and

undue burden. On October 14, 2026, Columbia National responded indicating that it would not generate the hit report as narrowing search terms on that basis was unacceptable and that it was still subject to undue burden and significant expense. On October 26, 2026, the Interested Parties filed the Honig Motion to Compel stating the parties had reached an impasse. Dkt. 279.

The unresolved issues concern Columbia National's withholding of responsive documents, the scope and testing of electronic searches, and its demand for reimbursement of compliance costs. Despite these efforts, the Trustees have been unable to resolve the disputes presented in this Motion.

*/s/ Frank J. Mastro*
Frank J. Mastro

**Certificate of Service**

I hereby certify that on November 6, 2026, I reviewed the Court's CM/ECF system and it reports an electronic copy of the Motion will be served electronically by the Court's CM/ECF system on the following:

| | |
|---|---|
| • Brian E. Barkley | bbarkley@barkenlaw.com |
| • Hugh M. (UST) Bernstein | hugh.m.bernstein@usdoj.gov |
| • Jill D. Caravaggio | jill@jill-lawoffice.net<br>paralegal@jill-lawoffice.net |
| • Aaron L. Casagrande | Aaron.casagrande@Icemiller.com |
| • Darrell William Clark | darrell.clark@stinson.com<br>catherine.scott@stinson.com |
| • Emily Devan | edevan@milesstockbridge.com |
| • Alan D. Eisler | aeisler@e-hlegal.com<br>alaneisler@gmail.com |
| • David V. Fontana | dfont@gebsmith.com |
| • Jason J. Giguere | jgiguere@zwickerpc.com<br>bknotices@zwickerpc.com |
| • Richard Marc Goldberg | rmg@shapirosher.com<br>ejd@shapirosher.com |
| • Zvi Guttman | zvi@zviguttman.com<br>zviguttman@gmail.com<br>zviguttman@outlook.com<br>MD55@ecfcbis.com |
| • Robert Kearney | robert.kearney@gtlaw.com |
| • Jeffery Thomas Martin | jeff@martinlawgroup.com<br>Martin.JefferyT.B119228@notify.bestcase.com<br>brittany@martinlawgroup.com<br>Diana@martinlawgroup.com |
| • Frank J. Mastro | fmastro@schlosslaw.com |
| • Stephen A. Metz | smetz@offitkurman.com |
| • Tracey Michelle Ohm | tracey.ohm@stinson.com<br>porsche.barnes@stinson.com |
| • Jeffrey M. Orenstein | jorenstein@wolawgroup.com |
| • John E Reid | jack@martinlawgroup.com<br>brittany@martinlawgroup.com<br>Diana@martinlawgroup.com |
| • Roger Schlossberg | bkcreditor@schlosslaw.com<br>jkemmerer@schlosslaw.com |

- Roger Schlossberg trustee@schlosslaw.com MD20@ecfcbis.com
- Robert G. Shuster rob@shusterlaw.com courts@shusterlaw.com
- Brent C. Strickland bstrickland@whitefordlaw.com mbaum@whitefordlaw.com brent-strickland-3227@ecf.pacerpro.com
- US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV
- Maurice Belmont VerStandig mac@mbvesq.com lisa@mbvesq.com mahlon@dcbankruptcy.com mac@dcbankruptcy.com verstandig.mauricer104982@notify.bestcase.com verstandiglaw@recap.email
- Shawn C. Whittaker shawn@wittaker-law.com

I hereby further certify that on November 6, 2026, a copy of the Motion was also mailed first class mail, postage prepaid to:

- Chasen Construction LLC
  Attn: Brandon Chasen
  12 W. Montgomery St.
  Baltimore, Md 21230
- Duque Construction LLC
  777 Briggs Chaney Road
  Silver Spring, MD 20905
- Catherine Lawrence
  Lawrence Law, LLC
  323 W. Camden Street, Suite 700
  Baltimore, MD 21201
- Shepherd Electric Co., Incorporated
  c/o Douglas H. Seitz, Esq.
  1 Olympic Place, Suite 800
  Towson, MD 21204
- Office of the United States Trustee
  101 W. Lombard St., Suite 2625
  Baltimore, MD 21202

*/s/ Frank J. Mastro*
Frank J. Mastro