IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| In re:<br><br>Chasen Construction, LLC,<br><br>Debtor. | Case No. 25-12356 -NVA<br><br>Chapter 11<br><br>**Declaration of Peter C. Ihrig in Support of Trustee's Motion to Compel Columbia National to Produce Documents in Response to Bankruptcy Rule 2004 Subpoena** |

I, Peter C. Ihrig, declare as follows:

1. I am a shareholder at Greenberg Traurig, LLP and am counsel to Roger Schlossberg the chapter 11 trustee ("Trustee") of the bankruptcy estate of Chasen Construction, LLC ("Chasen Construction").

2. I make this declaration based on personal knowledge and my review of documents produced to or acquired by the Trustee in relation to this matter.

3. I submit this declaration in support of the *Trustee's Motion to Compel Columbia National to Produce Documents in Response to Bankruptcy Rule 2004 Subpoena* (the "Motion"). Except as defined in this declaration, the capitalized terms have the meanings ascribed to them in the Motion.

4. To date, my review of Chasen Construction's financial and refinancing documents has indicated that Columbia National Real Estate Finance, LLC ("Columbia National") acted as the broker for at least 43 mortgage refinancings for Chasen Construction.

5. On July 7, 2026, a continued first meeting of creditors pursuant to 11 U.S.C. § 341(a) in the related chapter 7 bankruptcy of Brandon Chasen (case number 25-15437) was held in which Brandon Chasen testified (the “341 Meeting”).[1]

6. Mr. Chasen, a principal of Chasen Construction, testified at the 341 Meeting that Kevin Tehan was integral to Chasen Construction’s mortgage refinancing operations,[2] that Mr. Tehan coordinated with appraisers and lenders to appraise the properties held by Chasen Construction,[3] and that Mr. Tehan, other Columbia National employees, and the principals of Chasen Construction went on numerous golf trips together.[4]

7. Chasen Construction’s documents show that Columbia National issued multiple letters of recommendation for Chasen Construction to show to prospective lenders.

8. Chasen Construction’s documents show that Mr. Tehan attended a real estate professional event in Las Vegas in 2022 with the multiple Chasen Construction employees.

9. Chasen Construction’s documents show that Mr. Tehan and the principals of Chasen Construction scheduled standing dinner meetings to discuss business.

---

[1] An audio recording, official track 1529, and a transcript of the July 7, 2026, 341 Meeting can be provided to the Court if necessary.
[2] 341 Meeting 1:34:01–1:35:07.
[3] 341 Meeting 1:50:00–1:50:44.
[4] 341 Meeting 2:10:32–2:11:53.

10. Mr. Chasen testified at the 341 Meeting that Columbia National was the broker for almost all of Chasen Construction's mortgage refinancing transactions.

11. Mr. Chasen testified at the 341 Meeting that Mr. Tehan traveled to the Bahamas on Mr. Chasen's yacht with Mr. Chasen and an insurance broker to discuss the purchase of an island.[5]

12. Attached hereto as **Exhibit A** is a true and correct copy of the Trustee's June 18, 2026 Rule 2004 subpoena that was served on Columbia National.

13. Attached hereto as **Exhibit B** is a true and correct copy of the objection letter, dated July 6, 2026, received from Columbia National by the Trustee.

14. Attached hereto as **Exhibit C** is a true and correct excerpt of an email exchange between myself and Brian Moffet, counsel for Columbia National, dated October 12–14, 2026.

I declare under penalties of perjury that the foregoing is true and correct.

Executed on November 6, 2026

*/s/ Peter C. Ihrig*
Peter C. Ihrig

[5] 341 Meeting 2:10:32–2:11:53.

*Exhibit A*

# UNITED STATES BANKRUPTCY COURT

District of Maryland

In re Chasen Construction, LLC
Debtor

Case No. 25-12356

Chapter 11

## SUBPOENA FOR RULE 2004 EXAMINATION

To: ColumbiaNational Real Estate Finance LLC
*(Name of person to whom the subpoena is directed)*

■ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| SC&H Group<br>226 Schilling Circle, Suite 300<br>Hunt Valley MD 21031 | 07/16/26 10:00 am |

The examination will be recorded by this method: Stenographic means

■ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Attachment to Subpoena

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 6/18/26

CLERK OF COURT

OR

_________________________
*Signature of Clerk or Deputy Clerk*

[signature]
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Roger Schlossberg, Trustee , who issues or requests this subpoena, are:
Frank J. Mastro, Esq., Schlossberg | Mastro, P.O. Box 2017, Hagerstown, MD 21742; fmastro@schlosslaw.com; (301) 739-8610

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ____________________________________________
on *(date)* __________ .

☒ I served the subpoena by delivering a copy to the named person as follows: ________________________________
____________________________________________________________________________________________
________________________________ on (*date*) __________________ ; or

☐ I returned the subpoena unexecuted because: ________________________________________________________
____________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

________________________________________
*Server's signature*

________________________________________
*Printed name and title*

________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# ATTACHMENT TO SUBPOENA

## DEFINITIONS

For the purposes of this *Attachment to Subpoena*, the following words shall have the following definitions:

1. The terms "Document" or "Documents" shall be construed in their broadest and most liberal sense and, includes, without limitation: any written, typed, printed, recorded, coded, or graphic matter of any kind, however produced or reproduced; any electronically, digitally or magnetically recorded or stored matter of any kind or character; and any other matter or thing of any kind or character that stores, memorializes, or records information, whether transcribed by hand or by some mechanical, photographic or other means – and whether or not the original of said item now is in existence. Said terms further include, without limitation: advertisements; agreements; analyses; announcements; appointment books, articles; audiotapes; bills; books; books of account; brochures; bulletins; calendars; cancelled tickets; catalogues; cables; calendars or desk pads; cancelled checks; certificates; charts; compilations; computer diskettes; computer records; computer tapes; contracts; control sheets; correspondence; data processing media, forms, and records; deposition transcripts; diaries; directions; drafts; drawings; electronic mail; Electronically Stored Information; facsimiles; files; film; fliers; forms; graphs; handwritten notes; instructions; inter-office or intra-office communications; journals; labels; ledgers; letters; mailgrams; memoranda (including any type or form of notes; memoranda or sound recordings of personal thoughts, recollections or reminders, agreements, meetings or conferences); microfiche; microfilm; minutes; motion pictures; newsletters; newspapers; notes; notebooks; papers; records; records of meetings conferences and telephone conversations; reports; packaging; pamphlets; phono-records; photocopies; photographs, photostats; pictures; publications; receipts; reports; slides and still films; paper and computerized or electronic spreadsheets; statistical compilations; stenographic notes; studies; statements; sound and/or tape recordings; surveys; telecopies and tele-faxes; telegrams; telephonic messages; teletypes; telexes; technical reports; text messages; transcripts; transmittal slips; working papers; writings; videotapes; all ESI; and all electromagnetic storage media, including computer tapes, disks, and diskettes, and other data compilations from which information can be obtained decoded, and/or translated, as necessary, through the use of playback or detection devices into reasonably usable form; and other items, papers or matters similar to any of the foregoing, however denominated.

The terms "Document" and "Documents" further includes all drafts of the same and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

2. The terms "Electronically Stored Information" and "ESI" mean, in addition to that information contemplated by Federal Rule 34(a)(1)(A), any information on operational systems including, without limitation; accounting, financial, distribution, or manufacturing systems; E-

mail; Instant Messages (IM); Web pages; text messages; cell phone data; Excel or other spreadsheets and underlying formulae; metadata; computer databases (*i.e.*, Access, *etc*.), erased, fragmented or damages data; Blackberry data; and anything stored on computer or other electronic means located on or in, but not limited to: cache memory; optical disks; magnetic tapes/back-up tapes; magnetic disks (back-up drives; hard drives, floppy disks, jump drives; USB drives; *etc*.); PDAs, iPhones, Androids, Blackberries; Palm Pilots; cell phones; *etc*.

3. The terms "Communication" or "Communications" mean the transmittal of information by any means, unless otherwise specified below.

4. The term "Concerning" means relating to, referring to, describing, evidencing, or constituting.

5. The term "ColumbiaNational" refers to the examinee, ColumbiaNational Real Estate Finance LLC, the party to whom this *Subpoena* is directed.

6. The term "Chasen Construction" refers to Chasen Construction, LLC, the debtor in one of the bankruptcy cases from which this *Subpoena* is issued.

7. The term "Chasen Related Entity" refers to any of the numerous business entities which are affiliated with Chasen Construction and/or which are owned, in whole or in part, by at least the one of the individual members of Chasen Construction (Brandon M. Chasen Sr. and Paul W. Davis). A listing of the various known "Chasen Related Entities" is attached hereto.

8. The term "Review Period" refers to the period of time from January 1, 2018 to the date of ColumbiaNational's response to this *Subpoena*.

## DOCUMENTS TO BE PRODUCED:

1. All Communications during the Review Period between or among ColumbiaNational and Chasen Construction, and all Documents Concerning such Communications.

2. All Communications during the Review Period between or among ColumbiaNational and any Chasen Related Entity, and all Documents Concerning such Communications.

3. All Communications during the Review Period between or among ColumbiaNational and Brandon M. Chasen Sr., and all Documents Concerning such Communications.

4. All Communications during the Review Period between or among ColumbiaNational and Paul W. Davis, and all Documents Concerning such Communications.

5. All Communications during the Review Period between or among ColumbiaNational and Cushman & Wakefield Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr., and/or Paul W. Davis, and all Documents Concerning such Communications.

6. All Communications during the Review Period between or among ColumbiaNational and United Bank Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr., and/or Paul W. Davis, and all Documents Concerning such Communications.

7. All Communications during the Review Period between or among ColumbiaNational and Saul Ewing Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr., and/or Paul W. Davis, and all Documents Concerning such Communications.

8. All Communications during the Review Period between or among ColumbiaNational and any potential lenders Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr., and/or Paul W. Davis, and all Documents Concerning such Communications.

9. All Communications during the Review Period between or among ColumbiaNational and any other third party Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis, and all Documents Concerning such Communications.

10. All know your customer (KYC), anti-money laundering (AML), and related Documents compiled, collected or created by ColumbiaNational during the Review Period, and all Communications related thereto, Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis.

11. All engagement letters, brokerage agreements, fee agreements, and any other agreements between ColumbiaNational and Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis defining the scope of services to be provided by ColumbiaNational.

12. All Documents identifying or describing ColumbiaNational's role (broker, advisor, intermediary, placement agent, etc.) in any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis.

13. All Documents and Communications, including all marketing materials, offering memoranda, deal teasers, or pitch decks, prepared or distributed by ColumbiaNational in connection with any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period.

14. All Documents and Communications identifying or reflecting lenders, investors, or capital sources contacted by ColumbiaNational on behalf of Chasen Construction, any Chasen

Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period, including contact lists, distribution lists, and outreach logs.

15. All Documents and Communications, including term sheets, loan proposals, or indications of interest, received by ColumbiaNational from prospective lenders during the Review Period in connection with any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis.

16. All Documents and Communications identifying or reflecting lenders who declined to participate in any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period, including reasons given for declining to participate.

17. All Documents, including financial statements, rent rolls, property appraisals, environmental reports, and other due diligence materials, provided to ColumbiaNational by Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis for use in marketing to lenders or potential lenders during the Review Period.

18. All Documents reflecting ColumbiaNational's analysis or underwriting of any property owned by, or any transaction involving, Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period.

19. All Documents and Communications reflecting representations made to ColumbiaNational by Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period regarding property values, projected income, or borrower financial condition.

20. All invoices, fee statements, or compensation schedules related to any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period.

21. All Documents and records of fees actually paid to ColumbiaNational by or on behalf of Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period. including all wire transfer records, checks, and other documentation of payment.

22. All Documents reflecting any fee-sharing arrangements between ColumbiaNational and any co-broker, referral source, or third party in connection with any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period.

23. All Documents, including internal memoranda, notes, analyses, or deal approvals, prepared by ColumbiaNational Concerning any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period.

24. All files (electronic or physical) maintained by ColumbiaNational for any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period, including deal files and correspondence files.

25. All calendar entries, meeting notes, or call logs maintained by ColumbiaNational reflecting contact with Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr., Paul W. Davis or related lenders during the Review Period.

26. All Documents establishing or reflecting ColumbiaNational's licensure or registration to act as a mortgage broker or loan broker in any jurisdiction where transactions were conducted by or on behalf of Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr., and/or Paul W. Davis.

27. All Documents, including all complaints, notices, or correspondence, received by ColumbiaNational from any regulatory body Concerning ColumbiaNational's actions or omissions in connection with any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis.

28. All internal Documents and internal Communications during the Review Period involving, between, or among ColumbiaNational and its employees, officers, directors, contractors, and agents Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis

29. All Documents and Communications during the Review Period Concerning Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis, to the extent that such Documents are not encompassed by any prior request.

<u>Certificate of Compliance with Fed. R. Civ. P. 45(a)(4)</u>

I HEREBY CERTIFY that a copy of the foregoing subpoena has been served upon counsel for Chasen Construction LLC and Brandon M. Chasen Sr. prior to service upon the subpoenaed party herein.

*/s/ Frank J. Mastro*
Frank J. Mastro

## List of Chasen Related Entities

| Entity |
|---|
| CHASEN ACQUISITIONS LLC |
| CHASEN CONSTRUCTION LLC |
| CHASEN HOLDINGS LLC |
| CHASEN PROPERTIES LLC |
| HARBOR MANAGEMENT GROUP LLC |
| 12 W MONTGOMERY STREET LLC |
| 1702 LIGHT STREET PLACE LLC |
| 1719 EASTERN AVE LLC |
| 1742 FLEET STREET LLC |
| 2402 FOUR SEASONS LLC |
| 280 E PALMETTO PARK ROAD LLC |
| 415 ST PAUL PLACE LLC |
| 9 N HOWARD STREET LLC |
| CC 10 AND 12 W BIDDLE STREET LLC |
| CC 10 E BIDDLE STREET LLC |
| CC 10 W BIDDLE STREET LLC |
| CC 1005 NORTH CHARLES STREET LLC |
| CC 1012 N CALVERT STREET LLC |
| CC 1020 N CALVERT STREET LLC |
| CC 1022 N CALVERT STREET LLC |
| CC 1038 N CALVERT STREET LLC |
| CC 1114 SAINT PAUL STREET LLC |
| CC 115 E EAGER STREET LLC |
| CC 116 PRINCESS LONA LLC |
| CC 12 W BIDDLE STREET LLC |
| CC 1210 N CALVERT STREET LLC |
| CC 13 E READ STREET LLC |
| CC 1400 ALICEANNA STREET LLC |
| CC 1517 EASTERN AVE LLC |
| CC 1720 SAINT PAUL STREET LLC |
| CC 201 E BALTIMORE STREET LLC |
| CC 21 E EAGER STREET LLC |
| CC 2125 JACKSON BLUFF ROAD LLC |
| CC 2202 WEST PENSACOLA STREET LLC |
| CC 300 CATHEDRAL STREET LLC |
| CC 311 CATHEDRAL STREET LLC |
| CC 330 N CHARLES STREET LLC |
| CC 3522 BEECH AVE LLC |
| CC 4 AND 10 E BIDDLE STREET LLC |
| CC 4000 LINKWOOD ROAD LLC |
| CC 417 SAINT PAUL PLACE LLC |
| CC 419 SAINT PAUL PLACE LLC |
| CC 517 SOUTH BROADWAY LLC |
| CC 523 S BROADWAY LLC |
| CC 523 SOUTH BROADWAY LLC |
| CC 600 SOUTH CAROLINE STREET LLC |
| CC 601 SOUTH BROADWAY LLC |
| CC 7 AND 9 E EAGER STREET LLC |
| CC 7 E EAGER STREET LLC |

## List of Chasen Related Entities (cont.)

| Entity |
|---|
| CC 8 AND 21 E EAGER STREET LLC |
| CC 8 E EAGER STREET LLC |
| CC 816 PARK AVE LLC |
| CC 9 E EAGER STREET LLC |
| CC 807 Park Ave LLC |
| CC 817 SAINT PAUL STREET LLC |
| CC 902 SAINT PAUL ST LLC |
| CC 906 AND 935 SAINT PAUL STREET LLC |
| CC 906 SAINT PAUL LLC |
| CC 921 AND 923 SAINT PAUL STREET LLC |
| CC 921 SAINT PAUL STREET LLC |
| CC 923 SAINT PAUL STREET LLC |
| CC 930 N CALVERT STREET LLC |
| CC 935 SAINT PAUL STREET LLC |
| CC 938 N CALVERT STREET LLC |
| CC BROWARD 110 LLC |
| CC CHATEAUS DE MOUNT VERNON LLC |
| CC HARGRAVE 101 LLC |
| CC PARK PLACE LLC |
| CC SERENITY COURT LLC |
| CC SHEEP RANCH LLC |
| CC THE BEAR LLC |
| CC THE BO LLC |
| CC THE BRANDON II LLC |
| CC THE BRANDON LLC |
| CC CHATEAUS II LLC |
| CC THE JIMMY LLC |
| CC THE LYN LLC |
| CC THE MOLLY LLC |
| CC THE REGENCY LLC |
| CC THE SEMINOLE LLC |
| CC THE WHITNEY LLC |
| CC WASHINGTON HOUSE LLC |
| CDA FX HOLDINGS LLC |
| CDA HOLDINGS LLC |
| CHASEN 2022 FAMILY IRRV TR |
| CS 1122 N CALVERT LLC |
| CS 1511 EASTERN AVE LLC |
| CS 1617 EASTERN AVE LLC |
| CS 1709 FLEET STREET LLC |
| CS 211 SAINT PAUL PLACE LLC |
| CS 421 SOUTH BROADWAY LLC |
| CS 500 SOUTH BOND STREET LLC |
| CS 520 SOUTH CAROLINE STREET LLC |
| CS 631 CONSTITUTION LLC |
| FS 2601 LLC |
| FS 2603 LLC |
| LIVE LOADS LLC |
| MM REVIVE LLC |

## List of Chasen Related Entities (cont.)

| Entity |
|---|
| PB7 INVESTMENTS LLC |
| PN7 INVESTMENTS LLC |
| STJ BURNLEY LLC |
| STJ INVESTMENTS LLC |
| STJ MONACO LLC |
| STONE HOUSE LENDING LLC |
| ZUCKERBURG MANAGEMENT LLC |
| STJ LLC |

Entered: May 27th, 2026
Signed: May 27th, 2026

**SO ORDERED**

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>CHASEN CONSTRUCTION, LLC,<br><br>Debtor. | Case No. 25-12356-NVA<br><br>(Chapter 11) |
| In re:<br><br>BRANDON M. CHASEN SR.,<br><br>Debtor. | Case No. 25-15437-NVA<br><br>(Chapter 7) |

**ORDER GRANTING MOTION FOR RULE 2004 EXAMINATION**
**(ColumbiaNational Real Estate Finance, LLC)**

The above-captioned matter came before the Court upon the *Motion for Rule 2004 Examination of ColumbiaNational Real Estate Finance, LLC* (the "*Motion*") filed jointly by Roger Schlossberg, the Chapter 11 Trustee duly appointed and serving in Case No. 25-12356, and Zvi Guttman, the Chapter 7 Trustee duly appointed and serving in Case No. 25-15437, and upon any opposition or other response interposed in reply thereto. Upon careful consideration of the same, together with any evidence admitted or arguments advanced at any hearing

Case 25-15233 Doc 594 Filed 01/26/26 Page 2 of 2

conducted thereon, and it appearing that the relief requested in said *Motion* should be granted, it is therefore by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the *Motion* be, and the same hereby is, **GRANTED**; and it is further

**ORDERED**, that the Movants may examine the above-named party pursuant to Federal Bankruptcy Rule 2004; and it is further

**ORDERED**, that, as provided by Federal Bankruptcy Rule 2004(c), the attendance of such entity for examination and the production of documentary evidence may be compelled in the manner provided in Federal Bankruptcy Rule 9016 for the attendance of witnesses at a hearing or trial, or as otherwise provided by applicable law.

cc:

Roger Schlossberg, Chapter 11 Trustee

Zvi Guttman, Chapter 7 Trustee

Frank J. Mastro, Esquire

ColumbiaNational Real Estate Finance, LLC
c/o The Corporation Trust, Resident Agent
2405 York Road, Suite 201
Lutherville-Timonium, MD 21093

**END OF ORDER**

# *Exhibit B*

MILES & STOCKBRIDGE

**Brian L. Moffet**
410-385-3656
bmoffet@milesstockbridge.com

July 6, 2026

***VIA EMAIL AND FIRST CLASS MAIL***

Frank J. Mastro, Esquire
fmastro@schlosslaw.com
Schlossberg | Mastro
18421 Henson Blvd., Suite 201
Hagerstown, Maryland 21742

Zvi Guttman, Esquire
zvi@zviguttman.com
Law Office of Zvi Guttman, P.A.
P.O. Box 32308
Baltimore, Maryland 21209

**Re:** ***In re: Chasen Construction LLC,*** **Bankr. No. 25-12356-NVA**

***In re: Brandon M. Chasen, Sr.*****, Bankr. No. 25-15437-NVA**

**Columbia National Real Estate Finance, LLC's Objections to Subpoenas For Rule 2004 Examination**

Dear Messrs. Mastro and Guttman,

I represent non-party Columbia National Real Estate Finance, LLC ("**CN**") with respect to the Subpoenas for Rule 2004 Examination (the "**Subpoenas**") served by your offices in the above-referenced bankruptcies on June 22, 2026. This letter sets forth CN's written objections to the Subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(2)(B) and (e)(1)(D), as incorporated by Federal Rule of Bankruptcy Procedure 9016.

*First,* CN objects to the Subpoenas because they do not allow a reasonable time for compliance. CN received service on June 22, 2026. The Subpoenas require CN to search for, collect, and produce 29 categories of documents concerning more than 105 entities or individuals over a period exceeding eight (8) years, all in less than four weeks. Given the nature and breadth of the requests, the Subpoenas impose an undue and unreasonable burden on CN.

*Second*, CN objects to the Subpoenas in their entirety because they are overbroad and unduly burdensome. Rule 2004 examinations are limited to matters concerning the acts, conduct, property, liabilities, and financial affairs of the debtor in the cases in which the examination is authorized. Yet the Subpoenas are not so limited. Instead, they seek "[a]ll Communications" and "all Documents Concerning Such Communications" responsive to 29 broad categories spanning more than eight (8) years, with the only purported "limitation" being that the document refers or relates to Branden M. Chasen, Sr., Paul W. Davis, Chasen Construction, LLC or any of the more than 105

MILES & STOCKBRIDGE

entities included in the Subpoenas' definition of "Chasen Related Entity." The most egregious example of this overreach is Request No. 24, which seeks production of "[a]ll (electronic or physical) maintained by ColumbiaNational for any transaction involving Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr. and/or Paul W. Davis during the Review Period, including deal files and correspondence files." This request is so broad that it effectively encompasses the other 28 requests.

Despite its characterization as being tantamount to a "fishing examination," a Rule 2004 examination must be both relevant and reasonable. *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (internal quotations and citation omitted). "Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined." *In re Coffee Cupboard, Inc*., 128 B.R. 509, 514 (Bankr. E.D.N.Y.1991). Similarly, "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018) (quoting *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (collecting cases)). "Thus the scope of a Rule 2004 examination is at least as broad as discovery under the Federal Rules of Civil Procedure and subject to the same limitations." *In re Symington*, 209 B.R. at 685.

Consistent with these limitations, Rule 2004 examinations should not be "disruptive or costly." *In re Lufkin*, 255 B.R. 204, 209 (Bankr. E.D. Tenn. 2000). Specifically, an "examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989); see also *In re Eagle-Picher Indus., Inc*., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994), *amended,* , 1994 WL 731628 (Bankr. S.D. Ohio Aug. 2, 1994).

As presently drafted, the Subpoenas seek more than eight years' worth of documents containing any mention of Branden M. Chasen, Sr., Paul W. Davis, Chasen Construction, LLC or any of the more than 105 entities included in the Subpoenas' definition of "Chasen Related Entity." The sheer volume of material potentially implicated outweighs any likely benefit and is disproportionate to the needs of the cases. Moreover, compiling such voluminous materials would require a substantial investment of time and effort by a non-party with no interest in the underlying bankruptcies. CN has not yet completed a detailed analysis to quantify the burden of compliance, but it would plainly be monumental.

*Second,* CN objects to the Subpoenas to the extent they seek confidential and/or commercially sensitive business information belonging to CN or to third parties with whom CN does business. No confidentiality agreement or protective order has been entered in either bankruptcy that would adequately safeguard such information from disclosure. Bankruptcy Rule 9016 adopts Federal Rule of Civil Procedure 45 (the rule governing subpoenas) for purposes of cases under the Bankruptcy Code. In turn, Rule 45 empowers courts to modify or quash a subpoena that "subjects a person to [an] undue burden" or "requires disclosure of a trade secret or other confidential research, development, or commercial information [.]" Fed. R. Civ. P. 45(c)(3)(A)(iv) and Fed. R. Civ. P. 45(c)(3)(B)(i). The Court's authority to issue orders protecting confidential material from

discovery or from disclosure by a discovering party extends to Rule 2004 examinations. *Symington*, 209 B.R. at 687-88 (holding that "the combination of history and logic justifies the exercise of discretion ... to limit Rule 2004 examinations whenever 'good cause' is shown"). As discussed above, the Subpoenas seek to compel CN to disclose a burdensome volume of confidential and proprietary information. Accordingly, CN will not produce confidential or commercially sensitive materials absent appropriate confidentiality protections imposed by the court.

*Third*, CN objects to the Subpoenas because each of the 29 document requests seeks production of "ESI" from sources that are not reasonably accessible in light of the burden and cost required to identify, restore, review, and produce potentially responsive materials. To the extent the Subpoena seeks ESI from such sources, compliance would be unduly burdensome and disproportionate to the needs of the case.

*Fourth*, CN objects to the Subpoenas because certain requests are vague and ambiguous. Request No. 9 seeks communications between CN and "any other third parties," but does not identify those third parties, define the phrase "any other third parties," or provide any objective criteria by which CN could determine the identities of the third parties other than those that are not within the scope of the request. As drafted, Request No. 9 would require CN to speculate as to the scope of the request, and CN objects on that basis.

Request No. 10 also is vague and ambiguous. The Subpoenas do not define the terms "know your customer" or "anti-money laundering," and CN does not understand the intended scope or application of those terms as used in the request. Responding to Request No. 10 would therefore require CN to speculate as to what documents are being sought. CN further objects to the request's reference to "related Documents" because the request does not make clear whether the documents need to relate to "know your customer" or "anti-money laundering" or both.

CN objects to Request No. 26 as that request seeks documents that do not concern the acts, conduct, property, liabilities, and financial affairs of the debtors. Specifically, Request No. 26 seeks documents related to CN's licensure as a mortgage or loan broker "in any jurisdiction where transactions were conducted by or on behalf of Chasen Construction, any Chasen Related Entity, Brandon M. Chasen Sr., and/or Paul W. Davis." Simply because Chasen Construction, a Chasen Related Entity, Brandon M. Chasen Sr., and/or Paul W. Davis may have engaged in a transaction in a particular jurisdiction does not make CN's licensing status in that jurisdiction the proper subject of a Rule 2004 examination.

CN objects to Request No. 27 as vague and ambiguous in its use of the terms "complaints" and "regulatory body." These terms are not defined, and CN does not understand their intended meaning or use. Responding to Request No. 27 would require CN to speculate, and CN declines to do so.

MILES & STOCKBRIDGE

Notwithstanding these written objections to the Subpoena, CN has taken reasonable steps to preserve any data that may be responsive to the Subpoena and will continue to do so pending resolution of these objections. CN makes these objections without waiving its right to object to any additional subpoenas involving or relating to the subject matter of the responses herein. Furthermore, all objections and responses are made without waiver and with preservation of: (a) all questions as to competency, relevancy, materiality, privilege, and admissibility of the responses and documents, and the subject matter thereof, for any purpose and in any further proceeding in this action (including the trial of this action) and in any other action or matter; (b) the right to object to the use of any such responses or documents, or the subject matter thereof, on any ground in any further proceeding in this action (including the trial of this action) and in any other action or matter; (c) the right to object on any ground at any time to a demand or request for further responses or documents to these or any other discovery requests related to the subject matter of the information requested herein; and (d) the right at any time to review, correct, add to, supplement, or clarify any of the responses contained herein.

I also want to take this opportunity to request that you withdraw the requirement for CN to appear for an examination on July 16, 2026, based on the foregoing objections. It is my understanding from the cover letters that accompanied the Subpoenas that the sole purpose of the examination is for a representative of CN to produce the requested documents. In light of CN's objections to the Subpoenas, no documents will be produced prior to or on July 16th thus eliminating the need for anyone at CN to appear. If you contend otherwise, please let me know.

If you would like to discuss these objections or whether the requests can be narrowed to avoid undue burden on CN, please give me a call at your convenience. I am out of the country until July 14, 2026, but will be available to talk later that week.

Very truly yours,

*/s/ Brian L. Moffet*

Brian L. Moffet

*Exhibit C*

**From:** Moffet, Brian L.
**To:** Ihrig, Peter (Shld-MSP-LT)
**Cc:** fmastro@schlosslaw.com; Charles.Mills@icemiller.com; Collyard, Michael (Shld-MSP-LT); Devan, Emily K.; aaron.casagrande@icemiller.com; Silas, Rebecca (LSS-MSP-LT)
**Subject:** RE: In re: Chasen Construction LLC / In re: Brandon M. Chasen, Sr.
**Date:** Wednesday, October 14, 2026 4:42:16 PM
**Attachments:** image001.png
image011.png
image012.png
image013.png
image014.png
image015.png
image016.png
image017.png

---

Peter –

Thank you for your email. As it appears to have been sent in coordination with Aaron's correspondence last week, I will address both together. As a preliminary matter, I have confirmed that Mr. Tehan does not possess any backups of his mobile device communications and is prepared to execute a sworn affidavit to that effect in lieu of a Rule 2004 examination on that issue.

First, Columbia National is neither being difficult nor obstreperous in declining to provide the requested hit list. Rather, what the Trustees and the Honig family are demanding requires Columbia National to collect over 100 GB of data, download that data from its server, import it into Relativity, and then run the search terms to generate a hit list — all at Columbia National's expense. From there, Columbia National must continue to pay to host the data in Relativity for an indefinite period while the Trustees and the Honig family decide whether to demand additional searches, additional hit lists, or production of certain emails. The result is an open-ended financial commitment of unknown duration and unknown cost — borne entirely by a disinterested non-party. To be clear: the exercise of generating even a single hit list using the narrowed search terms is not cost-free. Columbia National will not embark on that process without knowing where it leads, when it ends, and who bears the cost.

The authority cited in your email is either inapposite or inconsistent with the law in this District. Far from supporting your position, *In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282 (Bankr. D.N.J. Nov. 8, 2023), undermines it: the court rejected the application of Rule 45(d)'s expense reimbursement provisions precisely because the subpoenaed party was an "interested party" in the bankruptcy. Specifically, the subpoenaed party was "a target of substantial claims by the Debtors' estate and allegedly one of the largest creditors in this chapter 11 case," and was owned by the son of the owner of the Debtor who was criminally indicted for the fraud that led to the bankruptcy filing. In stark contrast, Columbia National has no "actual interest" — much less any interest — in the outcome of these bankruptcy proceedings. That Columbia National did business with Chasen and his companies does not make Columbia National an "interested party." If it did, every vendor, lender, supplier, and service provider that transacted with any debtor would be deemed "interested" — a result that would effectively nullify the cost-shifting protections of Rule 45(d)(2)(B)(ii) for commercial counterparties. Nor are the Chasen bankruptcies of public

importance. While the bankruptcies may have been reported in the local papers, they do not involve mass torts like Purdue Pharma, they do not involve institutional failures like Enron and they do not involve violations of public trust like Boy Scouts of America or the Catholic Archdiocese. Your attempt to equate the Chasen bankruptcies with cases of that magnitude is wholly without merit.

Your reliance on *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281 (N.D. Cal. 2017) fares no better. *Balfour* has been cited by only a handful of other California trial courts for the proposition that a court considers the nonparty's financial ability to bear compliance costs, and by one Georgia court that actually shifted costs to the requesting party notwithstanding the non-party's ability to pay. *See Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, 2017 WL 11532480, at *4 (N.D. Ga. June 16, 2017) (assuming non-party "has the financial wherewithal to bear . . . the reimbursable costs that I identified above" but concluding "that the reimbursable expenses of $4,446.12 were 'significant' under Rule 45(d)(2)(B)(ii), and that those expenses should be shifted …"). More important, the multi-factor balancing test applied in *Balfour* and *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 87 (D. Mass. 2008) is flatly inconsistent with the law in this District. Judges in the District of Maryland recognize the mandatory cost-shifting protections of Rule 45(d)(2)(B)(ii) and shift costs based solely on a showing that the expenses are significant — without weighing the nonparty's financial resources. *See, e.g., In re Subpoena Served on Regent Educ., Inc.*, 2017 WL 6368618, at *4 (D. Md. Dec. 13, 2017) ("Defendants and this Court have an obligation to avoid imposing undue burden or expense on a non-party that is subject to a subpoena. Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). Therefore, I shall direct Defendants to bear the reasonable costs of any further production made as a result of the Court's Order, so as to "protect [Regent,] who is neither a party nor a party's officer from significant expense resulting from compliance," in accordance with Fed. R. Civ. P. 45(d)(2)(B)(ii)."). I would welcome any District of Maryland or Fourth Circuit authority in which a court considered a disinterested non-party's financial ability to comply with a subpoena as a factor in determining whether to shift costs because I am not aware that any such authority exists.

Although Columbia National acknowledges your willingness to narrow the search terms, the proposal remains unacceptable for the reasons stated above: generating the requested hit list — regardless of which terms are used — still requires Columbia National to incur the very significant expenses it should not be forced to bear as a disinterested non-party. Narrowing the search terms does not eliminate the cost of collection, processing, and hosting; it merely reduces the number of hits.

Nevertheless, in the spirit of compromise and to demonstrate Columbia National's good faith, Columbia National offers the following alternative. Columbia National will produce a complete set of the deal and servicing files for every loan involving Brandon Chasen and/or Chasen Construction, at no cost to the Trustees or the Honig family, within a reasonable timeframe. Each deal file contains a substantial volume of emails and correspondence that will provide the requesting parties with most — if not all — of the information necessary to understand each transaction. If, after reviewing the deal files, the Trustees and/or the Honig family believe they

require additional emails, any such request will necessarily be far narrower and more targeted than the current broad-based search terms — which is precisely the kind of proportional, focused discovery that Rule 45 contemplates. Columbia National reserves all rights to object to any subsequent request on all appropriate grounds, including costs. This proposal provides the Trustees and the Honig family with comprehensive deal documentation at no expense to them, while respecting the protections that Rule 45(d)(2)(B)(ii) affords non-parties like Columbia National.

If this compromise is acceptable, please let me know and we can discuss a timeline for production and finalize the protective order.

Brian

**Brian Moffet** | *Principal*
Miles & Stockbridge
direct: +1 (410) 385-3656 | cell: +1 (443) 831-1042

---

**From:** Peter.Ihrig@gtlaw.com <Peter.Ihrig@gtlaw.com>
**Sent:** Monday, October 12, 2026 5:24 PM
**To:** Moffet, Brian L. <bmoffet@MilesStockbridge.com>
**Cc:** fmastro@schlosslaw.com; Charles.Mills@icemiller.com; Michael.Collyard@gtlaw.com; Devan, Emily K. <edevan@MilesStockbridge.com>; aaron.casagrande@icemiller.com; Rebecca.Silas@gtlaw.com
**Subject:** [EXTERNAL] RE: In re: Chasen Construction LLC / In re: Brandon M. Chasen, Sr.

**[EXTERNAL]**

---

Brian,

The Trustees disagree with your assertions that ColumbiaNational is entitled to have its costs reimbursed and that ColumbiaNational's $15k-20k in estimated costs are reasonable or justified. In particular, your statement that the $15k-$20k in costs are "unquestionably significant" is incorrect. Courts consider at least three factors when determining whether costs are "significant" under Rule 45, "(1) whether the nonparty has an actual interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs than can the requesting party; and (3) whether the litigation is of public importance." In re Nat'l Realty Inv. Advisors, LLC, No. 22-14539, 2023 WL 7402282, at *2 (Bankr. D.N.J. Nov. 8, 2023) (citing *James Wm. Moore*, 9 Moore's Federal Practice § 45.41[3]). All three factors support finding that the $15k-$20k in costs are *insignificant* to ColumbiaNational.

ColumbiaNational can much more readily bear the costs than the Trustees can. ColumbiaNational's financial ability to bear the costs of production is a significant factor in determining whether the costs it seeks reimbursement for are "significant." Balfour Beatty

Infrastructure, Inc. v. PB & A, Inc., 319 F.R.D. 277, 281 (N.D. Cal. 2017) ("Courts look to the nonparty's financial ability to bear the costs of production.") And according to ColumbiaNational's website, it has earned revenue from closing over $10 billion in new loans since 2020 and from servicing over $7.7 billion in loans. So ColumbiaNational is certainly better situated, and completely able, to bear the $15k-$20k in costs.

ColumbiaNational also has an interest in the outcome of this bankruptcy based on its deep involvement with Chasen's business, including originating and servicing hundreds of millions in loans for relevant Chasen properties. *See* Behrend v. Comcast Corp., 248 F.R.D. 84, 87 (D. Mass. 2008) (citing Tutor-Saliba Corp. v. United States, 32 Fed. Cl. 609, 610 n.5 (1995) ("[subpoenaed party] was substantially involved in the underlying transaction and could have anticipated that the contract on which it was a subcontractor might, given its size, reasonably spawn some litigation, and discovery.")) The loans Columbia National originated for Chasen projects, by their very nature, involved risk of default, and therefore litigation risk (and potential discovery of ColumbiaNational).

This is also a matter of public importance. It can't be denied that these bankruptcies, and the Chasen businesses and properties that ColumbiaNational was involved with, have generated significant public interest and media coverage over the last year and a half. So this factor also supports the conclusion that ColumbiaNational these costs are not significant under Rule 45(d).

In addition, ColumbiaNational's ongoing refusal to provide a hit report for the Trustees' proposed search terms makes it impossible for the Trustees to evaluate ColumbiaNational's claimed burden (and for ColumbiaNational to justify its position that the Trustees' requests are unduly burdensome). Nevertheless, in an effort to avoid burdening the Court with motion practice, the Trustees will agree to the attached narrowed set of search terms for ColumbiaNational's collection and production of documents in response to their subpoenas. This narrowed set of search terms removes many of the terms ColumbiaNational found objectionable (the removed terms are identified as deleted in redline). If ColumbiaNational will agree to collect and produce documents from the custodians and date range identified in your September 1st email that hit on this narrowed set of search terms, and to produce those documents by October 30th, we will hold off on filing a motion to compel.

Please let us know by 5pm EDT on October 14th whether ColumbiaNational agrees to this proposal. If ColumbiaNational does not agree, the Trustees will move forward with filing a motion to compel.

**Peter Ihrig**

Shareholder

Greenberg Traurig, LLP
90 South 7th Street | Suite 3500 | Minneapolis, MN 55402
T +1 612.260.0413
Peter.Ihrig@gtlaw.com | www.gtlaw.com | View GT Biography

---

**From:** Moffet, Brian L. <bmoffet@MilesStockbridge.com>
**Sent:** Thursday, October 8, 2026 4:02 PM
**To:** Aaron.Casagrande@icemiller.com
**Cc:** Frank Mastro <fmastro@schlosslaw.com>; Ihrig, Peter (Shld-MSP-LT) <Peter.Ihrig@gtlaw.com>; Charles.Mills@icemiller.com; Collyard, Michael (Shld-MSP-LT) <Michael.Collyard@gtlaw.com>; Devan, Emily K. <edevan@MilesStockbridge.com>
**Subject:** RE: In re: Chasen Construction LLC / In re: Brandon M. Chasen, Sr.

***EXTERNAL TO GT***

Aaron –

I write in response to your September 24 correspondence and your October 6 follow-up. We will address each of the points you raised in turn.

As we have previously made clear, Columbia National's agreement to the proposed production protocol was and remains expressly contingent on the requesting parties bearing the significant costs of compliance created by the extraordinarily broad categories of documents your client and the Trustees have demanded. Columbia National is a non-party to this proceeding. Federal Rule of Civil Procedure 45(d)(2)(B)(ii), incorporated by Federal Rules of Bankruptcy Procedure 9016 and 2004, requires that any production order "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." This is not discretionary but rather mandatory. *See In re American Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016). Courts assess only two factors: "(1) whether the subpoena imposes expenses on the non-party, and (2) whether those expenses are 'significant.'" *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (citing *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)).

Here, compliance with the protocol under discussion is estimated to cost Columbia National between $15,000 and $20,000. That cost is unquestionably significant for a non-party with no stake in this litigation. Your contention that these costs are not "significant" given fees Columbia National earned from the Chasen Companies is legally irrelevant — it has no bearing whatsoever on the cost-shifting analysis under Rule 45(d)(2)(B)(ii). The Rule's two-factor test looks exclusively at whether the subpoena imposes expenses and whether those expenses are significant; it does not permit courts to offset compliance costs against unrelated commercial revenue. Moreover, your suggestion that Columbia National simply "reserve its rights" and produce voluntarily is untenable. Courts have squarely held that voluntary production without a court order compelling