**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **In re:**<br><br>**Chasen Construction, LLC,**<br><br>**Debtor,** | **Case No. 25-12356-NVA**<br>**Chapter 11** |

**NON-PARTY COLUMBIA NATIONAL REAL ESTATE FINANCE, LLC'S**
**<u>OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR SANCTIONS</u>**

# TABLE OF CONTENTS

**Page**


**I. INTRODUCTION** .....1

**II. PROCEDURAL HISTORY** .....2

A. The Subpoena and Columbia National's Objections .....2

B The Meet-and-Confer Process .....4

**III. ARGUMENT** .....8

A. Any Order Compelling Compliance With The Subpoena Must Shift The Cost Of Compliance To The Interested Parties To Protect Columbia National From "Significant Expense." .....8

1. Legal Standard for Cost Shifting Pursuant to Rule 45 .....8

2. Columbia National's Compliance Costs Are Significant .....10

a. The Interested Parties' test is inconsistent with Rule 45 and the leading cases. .....10

b. Even under the Interested Parties' test, cost-shifting is warranted .....16

B. The Interested Parties' Undue-Burden Argument Addresses an Objection Columbia National Has Not Made .....19

C. Columbia National Should Not Be Required to Negotiate a Protective Order Before Any Production Obligation Exists and Without Protection From the Associated Expense .....20

D. The Interested Parties Should Be Ordered to Pay Columbia National's Attorneys' Fees as a Sanction Under Rule 45(d)(1). .....21

**CONCLUSION** .....26

Non-party Columbia National Real Estate Finance, LLC ("**Columbia National**"), by its undersigned counsel, opposes the Motion to Compel Production of Documents in Response to Bankruptcy Rule 2004 Subpoena [Dkt. 279] (the "**Motion**") filed by Family Pension Corp. 401k Plan, Four Kids Investment Fund, LLC, Jonathan Honig, as Trustee of the Renee Honig 2019 Irrevocable Trust, and Jacob Honig (collectively, the "**Interested Parties**") and moves for sanctions pursuant to Fed. R. Civ. P. 45(d)(1).

## I. INTRODUCTION

Columbia National is not a party to this bankruptcy, is not a creditor, and has no stake in its outcome. It is a commercial mortgage broker that received a Rule 2004 subpoena demanding "[a]ll documents and communications" responsive to 14 broad categories spanning more than six years. Columbia National timely objected, and it has since offered repeatedly to produce documents under a defined protocol, provided that its costs of compliance, estimated at $15,000 to $20,000, are reimbursed. Rule 45, made applicable here by Bankruptcy Rule 9016, leaves no discretion on that point: any order compelling compliance "***must*** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added). Every federal court of appeals to address the question since the 1991 amendment has held that this protection is mandatory and that the only questions are whether the subpoena imposes expense on the nonparty and whether that expense is significant.

The Interested Parties do not dispute the cost estimate. They argue instead, relying on a single unpublished bankruptcy decision from New Jersey, that a $15,000 to $20,000 expense is not "significant" because, among other things, Columbia National can bear it more readily than they can. That argument is irrelevant in the text of Rule 45, which asks only whether the expense is significant, not which party is better able to absorb it. It also does not fit the record. The Interested

Parties lent more than $35 million to the Chasen-related entities.[1] Parties with the resources to extend that much credit are well positioned to pay the cost of the discovery they have chosen to pursue, and requiring them to do so will not reduce any recovery available to the estate's creditors. Columbia National, by contrast, had no say in the scope of the Subpoena and should not be required to subsidize an investigation in which it has no interest. The Court should deny the Motion or, if it orders compliance, require the Interested Parties to bear Columbia National's costs of compliance. The Court should also award Columbia National sanctions against the Interested Parties for failing "to take reasonable steps to avoid imposing undue burden or expense" on Columbia National as required by Fed. R. Civ. P. 45(d)(1).

## II. PROCEDURAL HISTORY

Because the Factual Background in the Motion to Compel omits several events that bear directly on the relief requested, Columbia National provides the following procedural history for the Court's consideration.

### A. The Subpoena and Columbia National's Objections

The Court granted the Interested Parties' motion for a Rule 2004 examination of Columbia National on May 19, 2026. ECF No. 184. The Interested Parties served their subpoena on June 2, 2026. Mot. at 1. The Subpoena was not tailored to limit the burden or expense on Columbia National. To the contrary, it demanded that Columbia National produce "[a]ll documents and communications" responsive to 14 broad categories spanning more than six (6) years, with the only "limitation" being that the document refers or relates to any of the more than 135 individuals

[1] The Interested Parties filed four proofs of claim, based on fourteen loans to Chasen Acquisitions, LLC: Claim No. 21 filed by Jacob Honig for $763,506.00; Claim No. 22 filed by Four Kids Investment Fund LLC for $5,954,872.38; Claim No. 23 filed by Jonathan Honig, as Trustee for $2,675,788.33; and Claim No. 24 filed by Family Pension Corp. 401k Plan for $28,228,592.67. Columbia National was not involved in these loans.

and entities included in the Subpoena's definitions of "Debtor," "Insiders," "Affiliated Entity," or "Individual." ECF No. 279-1. Representative requests include:

> 1. All documents and communications referring to or relating to the Debtor, Insiders, and/or an Affiliated Entity or Individual.
>
> 2. All documents and communications between You and the Debtor, Insiders, and/or an Affiliated Entity or Individual.
>
> * * *
>
> 5. All documents and communications between You and any third party relating to the Debtor, Insiders, and/or an Affiliated Entity or Individual.

*Id.*

On June 16, 2026, Columbia National timely served written objections to the Subpoena pursuant to Fed. R. Civ. P. 45(d)(2)(B). *Id.* Among other things, Columbia National objected that the Subpoena was overbroad and unduly burdensome, that it sought confidential commercial information without a protective order, and that the costs of compliance would be substantial and disproportionate to the needs of the case. ECF No. 279-2.

On June 22, 2026, Roger Schlossberg, Chapter 11 Trustee for the bankruptcy estate of Chasen Construction, LLC, and Zvi Guttman, Chapter 7 Trustee for the bankruptcy estate of Brandon M. Chasen Sr., served their own Subpoenas for Rule 2004 Examination on Columbia National, and these subpoenas were even broader and more burdensome than the Interested Parties' Subpoena. Columbia National timely objected to those subpoenas as well on July 6, 2026.

Because all three subpoenas seek overlapping documents, Columbia National proposed that the Trustees and counsel for the Interested Parties collectively confer in an effort to identify a single, much narrower set of documents that could be produced in response to all three subpoenas. The Trustees objected to the idea of a single production but were nevertheless willing to meet and confer on Columbia National's objections.

**B. The Meet-and-Confer Process**

On July 23, 2026, counsel for the Interested Parties and Columbia National (in addition to counsel for the Trustees) participated in a video meet-and-confer. Rather than go through each subpoena—request by request—Columbia National asked the requesting parties to identify the specific documents they want produced. In addition to the "deal files" for the loans Columbia National brokered to Brandon Chasen, Chasen Construction, LLC, or any of the Chasen-related entities, the Interested Parties asked for production of emails and mobile device communications and offered to provide a list of search terms. Columbia National advised that while the "deal files" could be produced with minimal effort, it had concerns regarding the burden and expense of collecting, searching, and producing the electronic communications.

On July 29, 2026, counsel for the Interested Parties and Columbia National (in addition to counsel for the Trustees) participated in another video meet-and-confer. During this call, the parties discussed the following proposal:

- Columbia National will produce the deal files and servicing files as maintained in the ordinary course. All documents will be marked and treated as confidential.[2]

- The Requesting Parties will provide a list of search terms to run against the emails of the Columbia National employees who worked on any of the Chasen-related loans and emails containing any of those terms will be produced.[3]

---

[2] Throughout their Motion to Compel, the Interested Parties fault Columbia National for not producing "the loan files it offered to produce in July and offered again on September 1" and suggest that Columbia National agreed to produce the files and then "reversed course." ECF No. 279 at 5, 8. To the contrary, each of Columbia National's offers to produce was conditioned on an agreement on costs. That condition was important because, as explained in Section III.A, *infra*, the protections afforded a non-party under Fed. R. Civ. P. 45(d)(2)(B)(ii) are not available after a production is voluntarily made.

[3] The parties also discussed text messages between Brandon Chasen and Kevin Tehan of Columbia National. Although Mr. Tehan's mobile device is his personal property, Columbia National advised that the device retains messages for only 30 days, after which they are automatically and permanently deleted, and that Mr. Tehan has no backups of his mobile communications. Because Mr. Tehan has not texted Mr. Chasen in nearly two years, any such messages were deleted well before any bankruptcy case was filed. Columbia National offered a sworn declaration from Mr. Tehan confirming that he cannot produce texts with Mr. Chasen. The Interested Parties never responded to the offer and instead moved to examine Mr. Tehan, citing the absence of text messages as a basis. *See* ECF No. 276.

For this proposal to be acceptable, Columbia National made clear that someone will have to pay the costs of compliance. After initially rejecting Columbia National's demand that those costs be paid, the Interested Parties and Trustees suggested that Columbia National obtain an estimate for their consideration.

On August 7, 2026, Columbia National received a 6-page list containing 241 individual search terms. *See* Proposed Search Terms attached as **Exhibit A**. The list included generic terms like "Sandy," "Fleet," "Suites," "Howard," "Charles," "Roland," "Cathedral," and "Bond" and identified email domains of law firms, banks, lenders, and title companies with whom Columbia National does business wholly unrelated to Brandon Chasen, Chasen Construction, LLC, or any of the Chasen-related entities.

Columbia National reviewed the 6-page list of search terms and identified the terms that were overly broad and likely to capture emails unrelated to any Chasen-related transaction. On August 19, 2026, Columbia National provided a revised list of 126 acceptable search terms to the Requesting Parties. *See* email dated August 19, 2026, attached as **Exhibit B.** In that same email, Columbia National advised that it was "working to prepare a cost estimate" for compliance and that Columbia National "reserves the right to object to searching for, collecting, reviewing, and producing documents if doing so would be unduly costly and the propounding parties refuse to reimburse Columbia National for those costs." *Id.*

On August 28, 2026, the Interested Parties responded by insisting that all 241 search terms be used to generate a "hit report," from which the Interested Parties would determine for themselves whether any of the terms are overly broad or burdensome. *See* email dated August 28, 2026 attached as **Exhibit C**. The response did not address the cost concerns raised in Columbia National's August 19 email.

Four days later, on September 1, 2026, Columbia National proposed a production protocol that (i) identified four custodians and a collection period of January 1, 2018 through July 31, 2026; (ii) offered to produce the complete deal and servicing files for every loan to a Chasen-related entity; (iii) offered to run the 126 acceptable search terms across the custodians' emails and provide a hit report and then produce the emails containing those terms; and (iv) offered to run the 115 objectionable terms against the remaining emails and provide a second hit list showing the number of records captured for each term without any commitment to producing any of those emails. ECF No. 279-3. Importantly, Columbia National made clear that "[t]he foregoing production protocol is expressly conditioned on reimbursement of CN's compliance costs" and advised that "those costs are estimated at $15,000 to $20,000." *Id.*

Three weeks passed without a response to Columbia National's proposal. On September 24, 2026, the Interested Parties finally responded, stating that "we disagree with CN's contention that it is entitled to a reimbursement of compliance costs in responding to the subpoenas" and suggesting that Columbia National "produce the requested documents with a reservation of rights that would permit [it] to seek a future allocation/award of fees, with our clients reserving the right to object to any such request." ECF No. 279-4.[4] The Interested Parties also provided a draft protective order for the first time. *Id.*

[4] The Interested Parties knew this offer was illusory because Columbia National already advised that "[u]nder controlling Fourth Circuit authority, [Columbia National] cannot voluntarily produce documents in response to the subpoenas and then ask the court to shift the cost of compliance. *See In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *4 (D. Md. Apr. 29, 2019) (explaining that if the responding party objects to, but then produces the discovery requested prior to the court issuing an order requiring such production, the protections of Rule 45(d)(2)(B)(ii) do not apply) (citing *Lee v. Virginia State Bd. of Elections*, 2016 WL 6915308, at *2 (E.D. Va. Sept. 2, 2016))." ECF No. 279-3.

On October 8, 2026, Columbia National wrote to the Interested Parties and reiterated its position on costs and production.[5] ECF No. 279-6. Specifically, Columbia National made clear that its "agreement to the proposed production protocol … remains expressly contingent on the requesting parties bearing the significant costs of compliance created by the extraordinarily broad categories of documents" being demanded and that "absent an agreement on full cost reimbursement, Columbia National will not produce the expansive documents you have requested, nor will it run the objectionable search terms or generate the supplemental hit reports you have requested identifying unique documents." *Id.* Columbia National further explained that "[u]ntil the threshold issue of cost reimbursement is resolved, it would be premature and wasteful for Columbia National to incur the expense of collecting and storing the records, running additional searches, and generating reports." *Id.*

On October 12, 2026, the Interested Parties' counsel proposed a narrowed set of search terms—reduced from the original 241 terms to 153 terms-conditioned on production less than three weeks later, by October 30, and requested a response by 5:00 p.m. on October 14. *See* ECF No. 279-8. The Interested Parties continued to maintain that Columbia National is not entitled to its costs of compliance and that the $15,000-$20,000 estimate is not significant. *Id.*

Columbia National responded on October 14, 2026 with a final proposal, which the Motion to Compel does not mention. *See* Email dated October 14, 2026, attached as **Exhibit D**. Columbia National appreciated the offer to narrow the search terms but explained that the proposal "would still require [Columbia National], as a disinterested non-party, to pay significant collection, processing, and hosting costs." *Id.* As a compromise, Columbia National offered to produce, at

[5] The Interested Parties suggest that Columbia National was ignoring its September 24 email. ECF No. 279 at 4. To the contrary, by email dated September 30, undersigned advised that it was in the process of scheduling a call with Columbia National and that once the call takes place, the parties can thereafter schedule a time to talk.

no cost to the Trustees or the Interested Parties, the complete deal and servicing files for every loan involving Brandon Chasen, Chasen Construction, LLC, or any of the Chasen-related entities. Columbia National explained that "[e]ach deal file contains a substantial volume of emails and correspondence that will provide … most — if not all — of the information necessary to understand each transaction." *Id.* If, after reviewing the deal files, the Trustees and/or the Interested Parties believe they require additional emails, they can make a request at that time, with all parties reserving all rights to object. *Id.* Columbia National noted that any later request will likely "be far narrower and more targeted than the current broad-based search terms — which is precisely the kind of proportional, focused discovery that Rule 45 contemplates." *Id.* No one responded to this proposal. Instead, the Interested Parties filed the Motion to Compel.

## III. ARGUMENT

### A. Any Order Compelling Compliance With The Subpoena Must Shift The Cost Of Compliance To The Interested Parties To Protect Columbia National From "Significant Expense."

#### 1. Legal Standard for Cost Shifting Pursuant to Rule 45.

Bankruptcy Rule 2004 permits the examination of persons and entities with knowledge of the debtor's "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the estate…." Fed. R. Bankr. P. 2004(b). "Despite its characterization as being tantamount to a 'fishing examination,' a Rule 2004 examination must be both relevant and reasonable." *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (internal quotations and citation omitted). "Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991). Similarly, "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Kearney*,

590 B.R. 913, 921 (Bankr. D.N.M. 2018) (quoting *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (collecting cases)).

Consistent with these limitations, Rule 2004 examinations should not be "disruptive or costly." *In re Lufkin*, 255 B.R. 204, 209 (Bankr. E.D. Tenn. 2000). Specifically, an "examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989). Rule 2004 thus does not license an examining party to impose the burden of its investigation on others without regard to cost.

When a Rule 2004 examination calls for documents, production proceeds in accordance with Bankruptcy Rule 9016, Fed. R. Bankr. P. 2004(c), which makes Federal Rule of Civil Procedure 45 applicable in bankruptcy proceedings. *See* Fed. R. Bankr. P. 9016. Rule 45 states that the district court's order compelling compliance with a subpoena "***must*** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance," Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added), and provides no exceptions. This language "leaves no room for doubt that the rule is mandatory." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *see In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *4 (D. Md. Apr. 29, 2019); *see also In re Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016); *In re Subpoena Served on Regent Educ., Inc.*, 2017 WL 6368618, at *3 (D. Md. Dec. 13, 2017) (where the subject of a subpoena objects and the court orders compliance, the subject "must be protected from...significant expense").

In *Linder v. Calero-Portocarrero*, the D.C. Circuit held that the 1991 amendment to Fed. R. Civ. P. 45 made cost shifting mandatory whenever a nonparty incurs significant expense from compliance, observing that the amendment was intended "to enlarge the protections afforded

persons who are required to assist the court." 251 F.3d 178, 182 (D.C. Cir. 2001) (quoting Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment). Thus, when discovery is ordered against a non-party, the court's inquiry is limited to two questions: "[1] whether the subpoena imposes expenses on the non-party, and [2] whether those expenses are 'significant.' " *Linder*, 251 F.3d at 182; *accord Legal Voice*, 738 F.3d at 1184; *Volt Power, LLC v. Butts*, 2020 WL 5865870, at *5 (E.D.N.C. Oct. 1, 2020) (recognizing that Rule 45 protects the subpoenaed party from excessive costs or "from significant expense resulting from compliance").

**2. Columbia National's Compliance Costs Are Significant.**

If ordered to comply with the production protocol set forth in Exhibit 8 to the Motion to Compel, Columbia National estimates the cost of compliance to be $15,000 to $20,000. *See* Declaration of Shawn McClurg, attached as **Exhibit E**. This is based on a vendor quotation reflecting (i) approximately 125 GB of data including email for the four custodians over an eight-and-a-half-year period and the deal files and servicing files related to loans brokered for any Chasen-related entity; (ii) a hosting period of five to six months, (iii) IT vendor resources, and (iv) third-party processing. The Interested Parties do not challenge the cost estimate nor do they dispute that compliance with the production protocol set forth in Exhibit 8 to their Motion to Compel will impose these expenses on Columbia National. Rather, the Interested Parties argue that $15,000-$20,000 is not a "significant expense" under a three-factor test applied in an unreported opinion by a bankruptcy court in New Jersey. ECF No. 279 at 9 (citing *In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282, at *2 (Bankr. D.N.J. Nov. 8, 2023)).

**a. The Interested Parties' test is inconsistent with Rule 45 and the leading cases.**

The Interested Parties contend that Columbia National's compliance costs are not significant under a three-factor test that considers "(1) whether the nonparty has an actual

interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs than can the requesting party; and (3) whether the litigation is of public importance." *Id.* Columbia National is not aware of any court in this District or in the Fourth Circuit that has applied this test, and it cannot be reconciled with the text of Fed. R. Civ. P. 45 as amended in 1991.

Historically, "[b]efore the amendment", a non-party's subpoena compliance "costs could be shifted, but the decision to do so was within the discretion of the district court." *Linder*, 251 F.3d at 182 (quoting *United States v. CBS, Inc.*, 666 F.2d 364, 371 n.9 (9th Cir. 1982)). In exercising that discretion, courts looked to "at least seven factors . . . when determining whether to shift costs," including the three factors cited by the Interested Parties, but also including "the scope of discovery," "the invasiveness of the request," "the extent to which the producing party must separate responsive information from privileged or irrelevant material," and "the reasonableness of the costs of production." *United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 534 (C.D. Cal. 2014). However, these factors were "developed to guide the court's exercise of discretion, which was ***eliminated*** by the 1991 amendment" making cost-shifting of significant expenses from the non-party to the issuing party mandatory. *Id.* at 535 (emphasis added). "Each factor was posited and considered on the premise that the courts were determining whether to exercise their discretion," but since 1991 courts no longer have such discretion. *Id.* Indeed, "the purpose of the 1991 amendment was to, in part, 'clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence,'" and "to make cost-shifting a matter of course." *Id.* (quoting Advisory Committee's Note to the 1991 amendment). *See also Kisser v. Coal. for Religious Freedom*, 1995 WL 590169, at *1 (E.D. Pa. Oct. 4, 1995) ("[T]o disallow reimbursement would frustrate the policy of Rule 45 protecting

non-parties, who have no control over the scope of discovery, from having to subsidize litigation in which they are not a party.”).

The drafters of the 1991 amendment specifically “intended for costs to be more routinely shifted, i.e. not subject to equitable balancing by the courts, in order to avoid burdening non-parties who are compelled to 'assist the court by giving information or evidence.'" *McGraw-Hill Cos.*, 302 F.R.D. at 535. *Accord Linder*, 251 F.3d at 182. In the wake of the amendment “the multi-factor analysis—which helped courts decide whether to shift costs—is now obsolete.” *McGraw-Hill Cos.*, 302 F.R.D. at 536. “Someone must pay the costs of production,” and it is only “fair and efficient” that the burden does not “fall on a . . . non-party who is powerless to control the scope of discovery,” as this incentivizes “the requesting party to keep requests as narrow as possible.” *Id*. at 535-36. This is true not only as a matter of the drafters’ express policy, but pursuant to the plain text of the Rule.

The parties agree that the question before the Court is whether Columbia National’s estimated costs of compliance of $15,000-$20,000 are significant. They differ on what “significant” means. Columbia National gives the word its ordinary meaning: “having or likely to have influence or effect; important,” or “large enough to be noticed or to have an effect.” *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/significant (last visited November 6, 2026). That reading is consistent with how the leading cases have applied Rule 45 since the 1991 amendment, as discussed below. The Interested Parties, by contrast, read “significant” to incorporate a discretionary three-factor balancing test that is entirely inconsistent with and unsupported by the text of Fed. R. Civ. P. 45.

“Absent a strained definition of ‘significant,’ . . . a non-party's expenses are not made less significant by the fact that the litigation is important to the general public.” *McGraw-Hill Cos.*,

302 F.R.D. at 535. *See also In re Mod. Plastics Corp.*, 890 F.3d 244, 252 n. 6 (6th Cir. 2018) (noting that whereas "before the 1991 amendment to Rule 45, courts applied a number of equitable factors to determine whether to exercise discretion to shift the cost of production to the requesting party," after the amendment "doing so would be inconsistent with the language of the current rule"). *Accord In re Letters Rogatory Issued by Nat. Ct. of First Instance in Com. Matters N. 23 of Fed. Cap. of Argentinean Republic*, 144 F.R.D. 272, 278 (E.D. Pa. 1992). Indeed, every Circuit Court to address the issue has ruled that the pre-1991 multi-factor discretionary test has been made obsolete as to non-parties pursuant to the post-1991 mandatory cost-shifting language in the amended Rule 45.

First, in *Linder*, the appellants had argued that the district court "erred in concluding that fee shifting" under Rule 45 from a non-party subpoenant to the party issuing the subpoena "was mandatory." *Linder*, 251 F.3d at 182. The D.C. Circuit Court of Appeals flatly rejected the appellants' argument, holding that the only question properly before the district court was "whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.'" If the costs were significant, the D.C. Circuit held, "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Id.* (emphasis added). This was without respect to any discretionary balancing of factors. *Id.* Fed. R. Civ. P. 45(d)(2)(B)(ii), the court held, "is susceptible of no other interpretation." *Id.*

More than a decade after *Linder*, the Ninth Circuit cited that decision as the "leading Court of Appeals decision to have analyzed the rule since the 1991 amendment." *Legal Voice*, 738 F.3d at 1184. The Ninth Circuit fully adopted the D.C. Circuit's approach, holding that the plain language of Fed. R. Civ. P. 45(d)(2)(B)(ii) "requires the . . . court to shift a non-party's cost

of compliance with a subpoena, if those costs are significant." *Id.* There was "no room for doubt that the rule is mandatory" such that "when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party," and if so, the court "must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'" *Id.* The Ninth Circuit had "no trouble concluding that $20,000 [wa]s significant," without making any inquiry into whether the non-party could bear the cost or any other factor from the pre-1991 amendment test. *Id.* at 1185.

The Fifth and Sixth Circuits, when presented with the same issue, reached the same conclusions as the D.C. and Ninth Circuits. *See Leonard v. Martin*, 38 F.4th 481, 490 n.8 (5th Cir. 2022) ("If, in fact, [the non-party's] cost of complying with the subpoena is significant, the district court should shift those costs. . . Given the value of . . . time and the number of . . . files . . . it seems almost certain that the cost of complying will be significant."). *Accord Mod. Plastics II*, 890 F.3d at 252 n.6.

The Fourth Circuit has not addressed the legal test governing mandatory cost-shifting under Rule 45 but has recognized that the 1991 amendments to the rule were adopted in an effort "to enlarge the protections afforded persons who are required to assist the court" and "[s]hifting attorney's fees necessary to discovery is consistent with this purpose, as well as the amendment's purpose of encouraging discovering parties to keep discovery requests narrow and specific to the issues at hand in the underlying litigation." *In re Am. Nurses Ass'n*, 643 F. App'x at 314 (internal quotation and citation omitted). Judges in this District likewise recognize the mandatory cost-shifting protections of Fed. R. Civ. P. 45(d)(2)(B)(ii) and shift costs based solely on a showing that the expenses are significant — without weighing the nonparty's financial resources or the

other factors offered by the Interested Parties. *See In re Subpoena Served on Regent Educ., Inc.*, ELH-17-354, 2017 WL 6368618, at *4 (D. Md. Dec. 13, 2017) ("Defendants and this Court have an obligation to avoid imposing undue burden or expense on a non-party that is subject to a subpoena. Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). Therefore, I shall direct Defendants to bear the reasonable costs of any further production made as a result of the Court's Order, so as to "protect [Regent,] who is neither a party nor a party's officer from significant expense resulting from compliance," in accordance with Fed. R. Civ. P. 45(d)(2)(B)(ii).").

Columbia National's estimated costs of compliance of $15,000-$20,000 easily pass the test of a "significant" expense under that term's ordinary meaning. *See Legal Voice*, 738 F.3d at 1184 (finding $20,000 to be "significant" for purposes of Rule 45(d)(2)(B)(ii)); *Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of Rhode Island*, 2016 WL 8716426, at *8 (E.D. Pa. Nov. 4, 2016) (holding that $4,072.65 in expenses was significant to shift costs from a non-party to issuing party of subpoena); *G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 321 (D.D.C. 2016) (holding that expenses totaling $3,148.44 were significant for law firm Offit Kurman to respond as a non-party to subpoena); *Williams v. City of Dallas*, 178 F.R.D. 103, 113 (N.D. Tex. 1998) (finding a $9,000 estimate "significant"). The Interested Parties ignore this precedent, failing to cite the leading case, the D.C. Circuit's decision in *Linder*, 251 F.3d at 182, or any of its progeny—the Ninth Circuit's decision in *Legal Voice*, 738 F.3d at 1184, the Fifth Circuit's decision in *Leonard*, 38 F.4th at 490 n.8, or the Sixth Circuit's decision in *Mod. Plastics II*, 890 F.3d at 252 n.6, notwithstanding that those cases are the only published Circuit Court decisions to address the issue of cost-shifting from non-parties under Rule 45 following the 1991 amendment that made cost-shifting from nonparties mandatory.

The Interested Parties rely instead on a single unpublished decision from the New Jersey bankruptcy court, *In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282 (Bankr. D.N.J. Nov. 8, 2023). That decision does not provide a sound basis for departing from the federal appellate authority for two reasons.

First, *In re Nat'l Realty* does not cite any of the published circuit decisions discussed above, nor does the court address its reasoning or the text of Fed. R. Civ. P. 45 in exercising its discretion under the three-factor test offered here by the Interested Parties.

Second, the Interested Parties offer no reason to depart from the standard adopted by every circuit court to address the issue in favor of an unpublished, non-precedential decision that, to Columbia National's knowledge, no other court has cited. *In re Nat'l Realty* also stands apart from decisions in this District and in New Jersey that treat cost-shifting under Fed. R. Civ. P. 45(d)(2)(B)(ii) as mandatory. *See In re Subpoena Served on Regent Educ., Inc.*, 2017 WL 6368618, at *4; *Fuller v. Insys Therapeutics, Inc.*, 2018 WL 4941789, at *2 (D.N.J. Oct. 11, 2018) (citing *Legal Voice*, 738 F.3d at 1184 and finding "cost-shifting under Rule 45(d)(2)(B)(ii)" from non-parties to be "mandatory" under the Rule).

The plain text of Fed. R. Civ. P. 45 and the published circuit decisions interpreting it should therefore guide the Court's analysis. Under those authorities, the Interested Parties should be ordered to pay Columbia National's costs of complying with the production protocol set forth in Exhibit 8 to their Motion to Compel.

**b. Even under the Interested Parties' test, cost-shifting is warranted.**

Even applying the three-factor test from *In re Nat'l Realty*, Columbia National satisfies that discretionary balancing test to shift the cost of compliance to the Interested Parties. The three factors are the following: "(1) whether the nonparty has an actual interest in the outcome of the case;

(2) whether the nonparty can more readily bear the costs than can the requesting party; and (3) whether the litigation is of public importance." *In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282, at *2.

(1) Whether nonparty has an actual interest in the outcome

Columbia National has no interest in the outcome of the bankruptcy. It is not the debtor. It is not a secured creditor. And it is not an unsecured creditor. And unlike *In re Nat'l Realty*, Columbia National is not a target of substantial claims by the debtor, nor is there a familial relationship between the debtor and Columbia National. *Compare In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282, at *3 (holding that subpoenaed non-party is an interested party because it is "a target of substantial claims by the Debtors' estate and allegedly one of the largest creditors in this chapter 11 case"). In short, Columbia National has no interest in the outcome of these bankruptcy proceedings.

(2) Whether nonparty can more readily bear the costs than the requesting party

Columbia National is a commercial mortgage broker. Under the standard set forth in *E.E.O.C. v. Kronos Inc.*, the "primary consideration in fairly allocating subpoena-compliance costs is whether the costs 'exceed[ed] that which the respondent may reasonably be expected to bear as a cost of doing business.'" 694 F.3d 351, 370 (3d Cir. 2012), *as amended* (Nov. 15, 2012) (recognizing that "no statutory authority exists to compel shifting the costs of compliance with an administrative subpoena" and relying on a 1976 opinion involving enforcement of government investigative subpoenas). Responding to a subpoena in a bankruptcy in which it has no interest and is not a party is not a cost of Columbia National's business, and it cannot reasonably be expected to absorb more than $15,000 or $20,000 to do so. The Interested Parties point to the value of the loans Columbia National brokered and the revenue it generates annually, but the Interested Parties' own resources are at least as relevant.

The Interested Parties lent more than $35 million to the Chasen-related entities. Parties with those resources are well positioned to pay $15,000 to $20,000 for documents they have chosen to seek. And because the payment would come from the Interested Parties rather than the estate, shifting these costs will not reduce the funds available to creditors.

(3) Whether the litigation is of public importance

No published authority has interpreted the meaning of "public importance" for purposes of the three-factor discretionary test promoted by the Interested Parties because no published authority in this jurisdiction has adopted or applied that test. Even in other contexts, there is little guidance in the Fourth Circuit as to the meaning of "public importance." *See In re Qimonda AG*, 470 B.R. 374, 387 (E.D. Va. 2012) (recognizing that there is "only scant case law that addresses precisely what qualifies as a matter of public importance" for purposes of certifying order for appeal). One court in this District recognized that the phrase "a matter of public importance" should be "invoked only in narrow circumstances." *Douglas v. Dry Clean Concepts, Inc*., 2021 WL 4951918, at *5 (D. Md. Oct. 25, 2021). The issue must "transcend the litigants and involve a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Id.* (internal quotations and citations omitted).

Press coverage of the Chasen bankruptcies in the Baltimore Banner does not make those bankruptcies "matters of public importance" in this sense. ECF No. 279 at 13. These cases do not involve mass torts, as in Purdue Pharma; institutional failures, as in Enron; or violations of public trust, as in the Boy Scouts of America or Catholic Archdiocese cases. The Interested Parties' only argument on this factor is that "the requested loan files and communications will

advance . . . the identification of potential recoveries for creditors." ECF No. 279 at 12. That interest may be important to the Interested Parties, but it does not transcend the litigants in the way this factor requires.

Accordingly, even under the test proposed by the Interested Parties, any order requiring Columbia National to comply with the Subpoena as set forth in Exhibit 8 to the Motion o Compel should shift the cost of compliance to the Interested Parties.

**B. The Interested Parties' Undue-Burden Argument Addresses an Objection Columbia National Has Not Made.**

The Motion to Compel treats Columbia National's objection to the production protocol in Exhibit 8 as an objection based on undue burden. That is not Columbia National's position. Although Columbia National's original written objection to the Subpoena asserted undue burden, Columbia National has not objected to the protocol on that basis. It has consistently stated that it is willing to conduct the search, collect the records, and produce the documents in accordance with Exhibit 8, so long as its costs of compliance are reimbursed. That distinction matters because undue burden, which governs whether a subpoena should be quashed or modified under Fed. R. Civ. P. 45(d)(3)(A)(iv), is a different inquiry from the "significant expense" against which the Court must protect a nonparty under Fed. R. Civ. P. 45(d)(2)(B)(ii).

The Ninth Circuit has recognized this distinction. In *Legal Voice, supra*, the district court denied costs because the scope of production had been limited such that the cost "should not be overly burdensome." 738 F.3d at 1184–85. The Ninth Circuit reversed, holding that the district court "erred in its interpretation of Rule 45(d)(2)(B)(ii) by framing the issue in terms of undue burden, rather than significant expense." *Id.* at 1184. It explained that, "[r]ather than considering whether compliance was unduly burdensome, the district court should have considered only whether that cost was significant." *Id.* at 1185. The inquiry thus turns on two considerations: "[1]

whether the subpoena imposes expenses on the non-party, and [2] whether those expenses are 'significant.' " *Id.* (quoting *Linder*, 251 F.3d at 182). Neither asks whether compliance is unduly burdensome.

**C. Columbia National Should Not Be Required to Negotiate a Protective Order Before Any Production Obligation Exists and Without Protection From the Associated Expense.**

The Interested Parties note that Columbia National has not yet commented on the proposed Stipulated Confidentiality Agreement and Protective Order they circulated on September 24, 2026. Respectfully, that concern puts the cart before the horse. A protective order governs how documents are handled once they are produced, and it therefore presupposes an existing obligation or agreement to produce, which is not the case here. Columbia National, a nonparty, has already incurred thousands of dollars in attorneys' fees responding to the Interested Parties' broad Subpoena, and the Interested Parties have declined to pay any of Columbia National's costs of compliance. In those circumstances, Columbia National reasonably chose not to incur additional expense negotiating the terms of a production it is not yet required to make.

Fed. R. Civ. P. 45 also does not require Columbia National to negotiate a protective order at this stage. Columbia National timely objected to the Subpoena. Once a nonparty serves timely objections, it has no obligation to produce documents unless and until the serving party moves to compel and the Court enters an order compelling compliance. Fed. R. Civ. P. 45(d)(2)(B). Any such order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* As the Fourth Circuit recognized in *In re Am. Nurses Ass'n*, *supra*, those expenses include "attorney's fees necessary to discovery." 643 F. App'x at 314. Negotiating the terms of a protective order is part of the cost of compliance, and Fed. R. Civ. P. 45 contemplates that a nonparty will be protected from that cost.

Accordingly, to the extent the Court orders compliance with the Subpoena as set forth in

Exhibit 8 to the Motion to Compel, Columbia National respectfully requests that the Court also order the Interested Parties to pay Columbia National's attorneys' fees incurred in negotiating a mutually acceptable protective order. Those negotiations are likely to require some effort, as the proposed order attached to the Motion to Compel does not address the use of Artificial Intelligence. Columbia National therefore respectfully submits that it should be permitted to defer those negotiations until the Court has determined whether production is required and has entered an order protecting Columbia National from the significant expense of compliance.

**D. The Interested Parties Should Be Ordered to Pay Columbia National's Attorneys' Fees as a Sanction Under Rule 45(d)(1).**

Fed. R. Civ. P. 45 does more than protect a nonparty from the expense of compliance. It also imposes an affirmative duty on the party serving the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). That duty "reflects a balancing between the litigants' need to obtain information from non-parties and the need to protect outsiders to the litigation from having to incur undue burden and expense." *BMO Harris Bank, N.A. v. Richert Funding, LLC*, 2017 WL 11627485, at *10 (N.D. Ga. July 3, 2017) (quoting *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 527 (N.D. Fla. 2013)). The Rule is explicit about enforcement: the court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). This requirement applies here through Bankruptcy Rule 9016. *See* Fed. R. Bankr. P. 9016.

Notably, a finding of bad faith is not required. *See, e.g., Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679–80 (N.D. Okla. 2008) (awarding fees where the issuing party "forced the issue by moving to compel compliance with onerous and burdensome subpoenas," and holding that "good faith in issuing a subpoena is not sufficient to avoid sanctions"); *In re Mod. Plastics*

*Corp.*, 577 B.R. 690, 704–05 (W.D. Mich. 2017) ("*Mod. Plastics I*") (affirming bankruptcy court's Rule 45(d)(1) award against a creditor and its counsel; the Rule "does not require a finding of bad faith"). In *BMO Harris*, the court rejected the subpoenaing party's argument that Rule 45 sanctions depend on bad faith, agreeing with the Ninth Circuit that "bad faith is a sufficient ground for sanction, but it is not a necessary ground." 2017 WL 11627485, at *11 (quoting *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428–29 (9th Cir. 2012)). A party's "good faith in issuing a subpoena is not sufficient to avoid sanctions . . . if a party has issued the subpoena in violation of the duty imposed by that Rule." *Id.* (quoting *Huntair*, 254 F.R.D. at 679). The relevant question is simply "whether there has been a breach or violation of counsel's duty to take reasonable steps to avoid imposing undue burden or expense upon the person subject to the subpoena." *Id.* In answering that question, courts consider "(1) the relevance of the information requested, (2) the requesting party's need for the documents, (3) the breadth of the document request, (4) the time period covered by the request, (5) the particularity with which the documents are described, and (6) the burden imposed, including the expense and inconvenience to a nonparty to whom a request is made." *Id.* (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)).

*BMO Harris* closely resembles this case. There, a party served a nonparty bank with a subpoena seeking ten broad categories of documents, including electronically stored information. *Id.* at *7. The bank timely objected and offered a compromise production of 3,012 pages of documents; the subpoenaing party rejected the compromise because the bank would not also undertake electronic discovery, and then moved to compel. *Id.* at *7–8, *12. The magistrate judge denied the motion and awarded the bank its fees, finding that the subpoenaing party "took a hard-nosed approach" to the bank's objections, that its requests were "extraordinarily broad in both scope and time," and that it "was unwilling to limit the scope of the Subpoena prior to filing the

Motion to Compel." *Id.* at *9. The district court affirmed, noting that the bank "attempted to resolve the dispute by agreeing to produce" documents, while the subpoenaing party "made no attempt to limit the scope of its requests prior to filing the Motion to Compel." *Id.* at *12. The court also rejected the argument that the bank had forced the motion by refusing to produce. A timely objection "relieves the non-party of its responsibility to produce any documents," and "[n]either BB&T's filing of its Objection nor its refusal to produce the documents absent either a court order or an agreement by Richert to limit the scope of its document requests, precludes an award of BB&T's attorney's fees." *Id.* The court ultimately ordered the subpoenaing party to pay the fees the bank incurred in opposing the motion to compel and in preparing its fee request. *Id.* at *14–15.

Courts have reached the same result in bankruptcy cases. In *Mod. Plastics I*, a creditor in a chapter 7 case served nonparty subpoenas seeking 36 to 58 categories of documents spanning nine years, with "document" defined to include electronically stored information "mentioning, referring to, or related to" the debtor or its property. 577 B.R. at 703. The recipients repeatedly notified the creditor's counsel of their concerns, their compliance efforts, and their intent to seek reimbursement, and they proposed a search protocol, but counsel "did not meaningfully respond to any of these concerns or proposals, except to extend the deadlines for compliance." *Id.* at 703, 708. The bankruptcy court found that counsel "could have avoided some or all of this burden by providing some input . . . on the ESI protocol or narrowing the subpoena requests," and, as a sanction under Rule 45(d)(1), ordered the creditor and its counsel to pay the "lion's share" of the recipients' reasonable costs, including attorney's fees. *Id.* at 699, 703–04. The district court affirmed, rejecting the argument that expenses incurred before any order compelling production could not be recovered, because such a rule "would reward inaction" by the issuing party and "is

inconsistent with [its] duty to take reasonable steps to avoid imposing an undue burden or expense" on the recipients. *Id.* at 706–07.

The same conclusion follows here. The Subpoena demands "[a]ll documents and communications" responsive to 14 broad categories spanning more than six years, limited only by reference to more than 135 individuals and entities. ECF No. 279-1; *supra* Part II.A. The Interested Parties then proposed 241 search terms, including generic words such as "Sandy," "Fleet," "Charles," and "Bond," and the email domains of law firms, banks, lenders, and title companies with which Columbia National does business unrelated to any Chasen-related entity. *See* Ex. A.. When Columbia National identified 126 acceptable terms, the Interested Parties asked that all 241 terms be run so that they could decide for themselves whether any term was overly broad. *See* Exs. B and C. When Columbia National proposed a detailed production protocol conditioned on reimbursement of an estimated $15,000 to $20,000 in compliance costs, the Interested Parties responded three weeks later and declined to bear any of those costs. ECF No. 279-3 and 279-4. The October 12 proposal reduced the search terms to 153 but still declined any cost reimbursement, required production in less than three weeks, and requested a response within two days. *See* ECF No. 279-8. And when Columbia National offered on October 14 to produce the complete deal and servicing files at no cost to anyone, with all parties reserving their rights as to any later, more targeted email request, the Interested Parties did not respond and filed the Motion to Compel. *See* Ex. D.

Measured against the factors identified in *BMO Harris*, that record reflects a failure to take reasonable steps to avoid imposing undue burden or expense on a nonparty. The requests are broad in scope and time and are described by reference to scores of individuals and entities rather than with particularity. The Interested Parties have not explained why they need electronic

communications beyond the deal and servicing files before reviewing those files, which Columbia National has offered to produce without charge. And the expense is concrete: Columbia National has already incurred thousands of dollars in attorneys' fees, and the protocol the Interested Parties ask the Court to impose would cost an estimated $15,000 to $20,000 more. As in *BMO Harris* and *Mod. Plastics I*, Columbia National offered a compromise and a narrowed search protocol, while the Interested Parties declined to bear any cost and moved to compel without responding to Columbia National's final proposal. *See Mod. Plastics I*, 577 B.R. at 703–04. The Fourth Circuit has likewise affirmed shifting a nonparty's e-discovery expenses where the nonparty advised the requesting parties that the discovery "would entail significant expense," the requesting parties "were dilatory in communicating" with the nonparty, and they "changed the scope of the requested discovery." *In re Am. Nurses Ass'n*, 643 F. App'x at 315. Each of those circumstances is present here. *See supra* Part II.B. Columbia National's timely objections and its decision not to produce absent a court order or an agreement on costs do not weigh against sanctions; under *BMO Harris*, they are exactly what Rule 45 permits. 2017 WL 11627485, at *12.

This relief is distinct from the cost-shifting addressed in Section A. Rule 45(d)(2)(B)(ii) protects Columbia National from the significant expense of any compliance the Court orders, while Rule 45(d)(1) addresses the expense Columbia National has already been forced to incur because the Interested Parties did not take reasonable steps to limit that burden. *See Mod. Plastics I*, 577 B.R. at 706–07. The Fourth Circuit has recognized that an "appropriate sanction" under Rule 45(d)(1) "may include . . . reasonable attorney's fees." *In re Am. Nurses Ass'n*, 643 F. App'x at 314 (quoting Fed. R. Civ. P. 45(d)(1)). *American Nurses* held that fees a nonparty incurs in seeking to recover its fees are not "expense[s] resulting from compliance" that may be shifted under Rule 45(d)(2)(B)(ii), *id.*, but Columbia National's request for those fees rests on Rule 45(d)(1), which

expressly authorizes reasonable attorney's fees as a sanction, *see BMO Harris*, 2017 WL 11627485, at *14–15. Accordingly, Columbia National respectfully requests that the Court order the Interested Parties and their counsel to pay the reasonable attorneys' fees and expenses Columbia National incurred in objecting to the Subpoena ($3,375.00), addressing the breadth of the Subpoena and the significant expense of complying with it ($25,095.00), and opposing the Motion to Compel, including the fees incurred in preparing its fee submission ($17,140.00). *See* Declaration of Brian L. Moffet, attached as **Exhibit F**.

## IV. CONCLUSION

For the foregoing reasons, Columbia National respectfully requests that the Court deny the Motion to Compel or, if the Court orders compliance with the Subpoena as set forth in Exhibit 8 to the Motion to Compel, require the Interested Parties to bear Columbia National's costs of compliance, including the reasonable attorneys' fees incurred in negotiating a protective order, as Fed. R. Civ. P. 45(d)(2)(B)(ii) requires. Columbia National further requests that the Court order the Interested Parties and/or their counsel, pursuant to Fed. R. Civ. P. 45(d)(1), to pay $45,610.00 in reasonable attorneys' fees and expenses incurred by Columbia National in objecting to the Subpoena, addressing the breadth of the Subpoena and the significant expense of complying with it, and opposing the Motion to Compel, including the fees incurred in preparing its fee submission.

Dated: November 12, 2026

Respectfully Submitted,

/s/ Emily K. Devan

Brian Moffet, Fed. Bar No. 13821
Emily K. Devan, Fed. Bar No. 18595
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202
Phone: (410) 385-3413
bmoffet@milesstockbridge.com
edevan@milesstockbridge.com
*Counsel for Columbia National Real Estate Finance, LLC*

**Certificate of Service**

I HEREBY CERTIFY that on this 12th day of November 2026, a copy of the foregoing Opposition to Motion to Compel was served on all parties receiving notice pursuant to the Court's CM/ECF service, including:

Frank J. Mastro
Roger Schlossberg
Zvi Guttman
fmastro@schlosslaw.com
rschlossberg@schlosslaw.com
zvi@zviguttman.com
Counsel to the Trustees

Aaron L. Casagrande
Aaron.Casagrande@IceMiller.com
Counsel to the Honig Parties

/s/ Emily K. Devan
Emily K. Devan