**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **In re:**<br><br>**CHASEN CONSTRUCTION, LLC,**<br><br>**Debtor,** | **Case No. 25-12356-NVA**<br>**Chapter 11** |

**NON-PARTY COLUMBIA NATIONAL REAL ESTATE FINANCE, LLC'S**
**OPPOSITION TO TRUSTEE'S MOTION TO COMPEL**

Non-party Columbia National Real Estate Finance, LLC ("**Columbia National**"), by its undersigned counsel, opposes the Trustee's Motion to Compel Columbia National to Produce Documents in Response to Bankruptcy Rule 2004 Subpoena (ECF No. 295) (the "**Motion**") filed by Roger Schlossberg, Chapter 11 Trustee of the bankruptcy estate of Chasen Construction, LLC (the "**Trustee**"). Columbia National incorporates by reference its Opposition to Motion to Compel and Request for Sanctions (ECF No. 297) (the "**Opposition**") filed in response to the motion to compel of Family Pension Corp. 401k Plan, Four Kids Investment Fund, LLC, Jonathan Honig, as Trustee of the Renee Honig 2019 Irrevocable Trust, and Jacob Honig (collectively, the "**Interested Parties**").

## I. INTRODUCTION

"Nothing is free," yet neither the Interested Parties nor the Trustee is willing to pay the significant expense Columbia National will incur in responding to their subpoenas. Where the Interested Parties sought documents responsive to 14 broad categories spanning six years, the Trustee demands documents responsive to 29 expansive categories dating back to January 1, 2018, including "[a]ll Documents and Communications . . . Concerning Chasen Construction, any [of

the 105 identified] Chasen Related Entities, Brandon M. Chasen Sr., and Paul W. Davis." ECF No. 295-1 at 12 (Request No. 29).

Columbia National timely objected to the Trustee's subpoena and then spent the better part of four months working with the Trustee to provide the documents he says he needs, on a single condition: reimbursement of the significant expense of compliance. The Trustee refused, maintaining that the expense is not significant. Yet the Trustee is not willing to pay what he deems insignificant nor is he willing to consent to an administrative expense claim, as he has done for others. *See, e.g.,* ECF No. 107. Having rejected every compromise, the Trustee filed his Motion.

The Motion presents the same question as the Interested Parties' Motion to Compel: whether a non-party that timely objected to a Rule 2004 subpoena must bear the significant expense of complying with it. Rule 45, made applicable by Bankruptcy Rule 9016, answers that question. An order compelling compliance "***must*** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added). Every federal court of appeals to address that language since the 1991 amendment has held that cost-shifting is mandatory once the expense is significant. *See Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).

While the Trustee is highly critical of Columbia National, he nevertheless concedes that Columbia National's "push back is only that it doesn't want to pay the $15,000 [to $20,000] in costs" of compliance. ECF No. 295 at 3. The Trustee does not dispute the amount of the cost estimate. Instead, he argues that the expense is not significant because (i) Columbia National earned broker fees on Chasen-related loans; (ii) Columbia National is not a "traditionally disinterested" non-party; (iii) the bankruptcy has drawn press coverage, and (iv) the estate lacks

funds. *Id.* at 8-12. None of these considerations appears in Rule 45. The Ninth Circuit had "no trouble concluding that $20,000 [wa]s significant" without asking whether the non-party could afford it. *Legal Voice*, 738 F.3d at 1185. Judge Hollander similarly did not consider the non-party's financial wherewithal when she applied Fed. R. Civ. P. 45(d)(2)(B)(ii) to require "Defendants to bear the reasonable costs of any further production made as a result of the Court's Order, so as to 'protect [Regent,] … from significant expense resulting from compliance'" *In re Subpoena Served on Regent Educ., Inc.*, 2017 WL 6368618, at *4 (D. Md. Dec. 13, 2017). This same analysis applies here.

The Trustee's other arguments fare no better. First, relevance is not in dispute and has no bearing on whether an expense is significant. Second, Columbia National has not objected to the production protocol as unduly burdensome, so the Trustee's burden argument addresses an objection not before the Court. Third, the Trustee's suggestion that Columbia National should produce the material now and seek reimbursement later is untenable as such an approach would forfeit the very protection Rule 45 provides. *See In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *4 (D. Md. Apr. 29, 2019). Fourth, the estate's lack of funds is not a reason to make a non-party finance the Trustee's investigation; it is a reason to accept Columbia National's last offer to produce the complete deal and servicing files for every Chasen-related loan at no cost. ECF No. 295-1 at 24-26.

As explained more fully below, the Court should deny the Trustee's Motion or, if it orders compliance, require the Trustee and the Interested Parties to share Columbia National's costs of compliance. Alternatively, the Court should require the Interested Parties to bear all of Columbia National's costs of compliance and permit them to assert an administrative expense claim in the

bankruptcy. Either way, Rule 45(d)(2)(B)(ii) requires that Columbia National be protected from significant expense.

## II. ARGUMENT

### A. Any Order Compelling Compliance Must Shift the Cost of Compliance to the Requesting Parties to Protect Columbia National From "Significant Expense."

#### 1. Rule 45(d)(2)(B)(ii) Requires Cost-Shifting Once the Expense Is Significant.

Columbia National incorporates herein Section III.A of the Opposition. In brief, Rule 2004 examinations may not be "so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989). When a Rule 2004 examination calls for documents, Bankruptcy Rule 9016 makes Rule 45 applicable, and Rule 45 provides that an order compelling compliance "must protect" a non-party "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). That language "leaves no room for doubt that the rule is mandatory." *Legal Voice*, 738 F.3d at 1184; *see also In re Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016); *In re Subpoena Served on Regent Educ., Inc.*, 2017 WL 6368618, at *3–4 (D. Md. Dec. 13, 2017). The court's inquiry is limited to "whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.'" *Linder*, 251 F.3d at 182. If they are, "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Id.*

Columbia National estimates its cost of compliance with the requested protocol at $15,000 to $20,000, based on a vendor quotation reflecting approximately 125 GB of data, a hosting period of three months, IT vendor resources, and third-party processing. *See* ECF No. 297-5.[1] That

[1] Columbia National's Opposition suggests that the hosting time could be as long as five or six months but the estimated cost of compliance includes only three months of data hosting.

expense is significant under the ordinary meaning of the word and under the decisions applying Rule 45. *See Legal Voice*, 738 F.3d at 1185 ($20,000); *Williams v. City of Dallas*, 178 F.R.D. 103, 113 (N.D. Tex. 1998) ($9,000); *Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of R.I.*, 2016 WL 8716426, at *8 (E.D. Pa. Nov. 4, 2016) ($4,072.65); *G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 321 (D.D.C. 2016) ($3,148.44).

**2. The Trustee's Authorities Do Not Support Weighing Columbia National's Ability to Pay.**

The Trustee acknowledges that Rule 45 does not define "significant expense" and identifies two approaches: the three-factor test from *In re Nat'l Realty Inv. Advisors, LLC*, 2023 WL 7402282, at *2 (Bankr. D.N.J. Nov. 8, 2023), and the two-part test from *Linder*. ECF No. 295 at 8–9. For the reasons stated in Section III.A.2.a of the Opposition, the three-factor test is a remnant of the discretionary, pre-1991 framework and cannot be reconciled with the mandatory language of the current Rule. *See United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 535–36 (C.D. Cal. 2014); *In re Mod. Plastics Corp.*, 890 F.3d 244, 252 n.6 (6th Cir. 2018). Columbia National is not aware of any court in this District or the Fourth Circuit that has applied the three-factor test from *Nat'l Realty*.

The Trustee seeks to bring ability to pay into the two-part test as well, relying on the *Linder* court's observation that "a court *might* take into account the financial ability of the non-party to bear some costs"[2] and on *McGraw-Hill's* illustration of a small family business compared to a global financial institution. ECF No. 295 at 9 (emphasis added). Those passages do not carry the weight the Trustee places on them. The same decisions hold that cost-shifting is mandatory once

---

[2] The Trustee selectively quotes from *Linder* and omits the fact that the Court expressly declined to decide the question. The full sentence reads: "While a court might take into account the financial ability of the non-party to bear some costs (a question we do not reach today) . . . ." *Linder*, 251 F.3d at 182. The passage on which the Trustee relies is therefore *dicta* that the D.C. Circuit identified as an open question, not a holding that ability to pay bears on whether an expense is significant under Rule 45(d)(2)(B)(ii).

the expense is significant, *Linder*, 251 F.3d at 182, and that "the multi-factor analysis—which helped courts decide whether to shift costs—is now obsolete," *McGraw-Hill*, 302 F.R.D. at 536. *McGraw-Hill* also explained why: "[s]omeone must pay the costs of production," and it is "fair and efficient" that the cost not "fall on a . . . non-party who is powerless to control the scope of discovery," because that allocation gives "the requesting party" the incentive "to keep requests as narrow as possible." *Id.* at 535–36. Neither decision suggests that a court may exercise its discretion and decline to shift a $15,000 to $20,000 expense because the non-party is a solvent commercial enterprise. If that were the case, Fed. R. Civ. P. 45(d)(2)(B)(ii) would be a sliding scale under which the more revenue a non-party generates, the less significant its costs of compliance become. Not only is there no support in the Rule for this interpretation, but it would render the mandatory protections of Fed. R. Civ. P. 45(d)(2)(B)(ii) meaningless for the commercial non-parties—lenders, banks, investment firms, and credit card issuers—most likely to receive Rule 2004 subpoenas. A requesting party could always point to the non-party's revenue, assets, or transaction volume, and the word "must" would give way to the very discretionary balancing the 1991 amendment eliminated. *See Linder*, 251 F.3d at 182; *McGraw-Hill*, 302 F.R.D. at 535. It would also remove the incentive Rule 45 is designed to create: a requesting party that knows a well-resourced non-party will absorb the cost has no reason "to keep requests as narrow as possible." *McGraw-Hill*, 302 F.R.D. at 536. That is precisely what occurred here, where the Trustee served 29 expansive categories of requests spanning more than eight years and more than 100 entities.

**3. Columbia National's Broker Fees and Loan Volume Do Not Make the Expense Insignificant.**

The Trustee argues that the expense is insignificant because it represents approximately 0.5% of the $3 million in fees Columbia National allegedly earned on Chasen-related loans, and



102778\000004\4922-8366-8451.v2

an even smaller fraction of the $7.7 billion loan portfolio described on Columbia National's website. ECF No. 295 at 9–10. Those comparisons do not measure what Rule 45 asks the Court to measure. The fees were earned over several years for commercial mortgage banking services that have already been provided; they are not a reserve set aside to fund a third party's investigation. And the portfolio figure reflects loans owned *by others*, which says nothing about whether a particular out-of-pocket expense is significant to Columbia National. If the Trustee's approach were adopted, nearly every commercial non-party could be said to have the means to absorb the costs of compliance, and few would ever receive the protection Rule 45 says they "must" receive. That result would be at odds with the purpose of the 1991 amendment, which was "to enlarge the protections afforded persons who are required to assist the court." *Linder*, 251 F.3d at 182 (quoting Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment).

Even courts that consider a non-party's circumstances ask whether the costs "exceed[] that which the respondent may reasonably be expected to bear as a cost of doing business." *E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 370 (3d Cir. 2012). Responding to Rule 2004 subpoenas in a bankruptcy in which Columbia National is not a party, a creditor, or a defendant is not an ordinary cost of operating a commercial mortgage banking firm. It is an expense Columbia National incurs only because others have chosen to seek its records.

**4. The Estate's Lack of Funds Does Not Shift the Cost of the Trustee's Investigation to a Non-Party.**

The Trustee states that the estate has no assets to pay Columbia National's production expenses and that, even if it did, the Trustee "should not have to pay." ECF No. 295 at 4, 10. Rule 45(d)(2)(B)(ii) contains no exception for requesting parties with limited funds. It directs the Court to protect the non-party; it does not ask which party can more easily absorb the cost. Fed. R. Civ. P. 45(d)(2)(B)(ii); *Linder*, 251 F.3d at 182.

The record also offers the Trustee a practical answer. Columbia National has offered to produce, at no cost to anyone, the complete deal and servicing files for every Chasen-related loan—files that contain a substantial volume of emails and correspondence and will likely provide most, if not all, of the information needed to understand each transaction. *See* ECF No. 295-1 at 24-26. The Trustee describes the loan files as the material that "need[s] to be looked at." ECF No. 295 at 6. If the estate cannot fund broader electronic discovery, the proportional course is to begin with the files offered without charge and to make any further, more targeted request after reviewing them. In addition, the Trustee and the Interested Parties have coordinated their requests to Columbia National throughout, ECF No. 295 at 14–15, and the Interested Parties—who lent more than $35 million to Chasen-related entities (ECF No. 297 at 4)—have the resources to bear the cost of discovery that they are jointly pursuing. To the extent the Court orders the electronic discovery the requesting parties seek, it should require the Interested Parties to bear all of Columbia National's costs of compliance and permit them to assert an administrative expense claim in the bankruptcy. What Rule 45 does not permit is placing that cost on Columbia National.

**5. Even Under the Trustee's Three-Factor Test, Cost-Shifting Is Warranted.**

Columbia National incorporates herein Section III.A.2.b of the Opposition and addresses the additional points the Trustee raises.

**a. Columbia National has no interest in the outcome of the bankruptcy.**

The Trustee contends that Columbia National is not a "traditionally disinterested" non-party because it brokered loans for Chasen-related properties, earned fees on those loans, arranged appraisals, and because one of its employees, Kevin Tehan, had a personal and professional relationship with Brandon Chasen. ECF No. 295 at 10–11. While Columbia National disputes the Trustee's characterization of its role and of Mr. Tehan's conduct, the relevant query is whether the



102778\000004\4922-8366-8451.v2

non-party "has an actual interest in the outcome of the case." *Nat'l Realty*, 2023 WL 7402282, at *2. A business relationship with the debtor before the bankruptcy is not an interest in the outcome of the bankruptcy. Columbia National is not the debtor, has not filed a proof of claim, and is not a secured or unsecured creditor. Nor is it the subject of any claim by the estate. This stands in stark contrast to the facts in *Nat'l Realty*—the only case the Trustee cites on this point. *See* ECF No. 295 at 11 n.16. There, the court found that the subpoenaed non-party was interested because it was "a target of substantial claims by the Debtors' estate and allegedly one of the largest creditors in this chapter 11 case." 2023 WL 7402282, at *3. Neither circumstance is present here.

**b. Columbia National cannot more readily bear the cost than the requesting parties.**

For the reasons stated in Sections II.A.3 and II.A.4 above, this factor does not favor the Trustee. The relevant comparison is not between Columbia National and the estate alone, but between Columbia National and the requesting parties who have jointly pursued this discovery, including the Interested Parties.

**c. The bankruptcy is not a matter of "public importance" in the relevant sense.**

The Trustee relies on press coverage in the Baltimore Banner and on the effect of Chasen Construction's collapse on Baltimore's multifamily housing market. ECF No. 295 at 11–12. Columbia National does not minimize the effect of these events on tenants and the community. But the phrase "a matter of public importance" should be "invoked only in narrow circumstances," where the issue "transcend[s] the litigants." *Douglas v. Dry Clean Concepts, Inc.*, 2021 WL 4951918, at *5 (D. Md. Oct. 25, 2021) (internal quotations and citations omitted); *see also In re Qimonda AG*, 470 B.R. 374, 387 (E.D. Va. 2012). Press coverage from a local digital newspaper

with 81,000 subscribers[3] in a state that has 6.2 million people[4] hardly meets that standard. Moreover, the Trustee is not seeking documents from Columbia National for the benefit of the multifamily housing market allegedly impacted by the bankruptcy but rather for the benefit of the estate and its creditors like the Interested Parties. In any event, "a non-party's expenses are not made less significant by the fact that the litigation is important to the general public." *McGraw-Hill*, 302 F.R.D. at 535.

**B. The Relevance of the Documents Is Not in Dispute and Does Not Bear on Whether the Expense Is Significant.**

Much of the Trustee's Motion is devoted to the relevance of Columbia National's documents to the Trustee's investigation. ECF No. 295 at 5–6. Columbia National has not refused to produce documents on relevance grounds and is willing to comply with the Subpoena as set forth in Exhibit 8 to the Interested Parties' Motion to Compel so long as it is reimbursed for the significant expense associated with compliance. The Trustee reasons that because the documents are "uniquely and highly relevant," any burden of producing them "can't be considered 'undue.'" ECF No. 295 at 6. Regardless of the merit of that reasoning under Fed. R. Civ. P. 45(d)(3)(A)(iv), it has no bearing on Fed. R. Civ. P. 45(d)(2)(B)(ii). The significant-expense inquiry asks only whether compliance imposes expense on the non-party and whether that expense is significant. *Linder*, 251 F.3d at 182; *Legal Voice*, 738 F.3d at 1184. The relevance of the documents to the requesting party is a reason to obtain them, not a reason to make a non-party pay for producing them.

---

[3] https://dicktofel.substack.com/p/the-baltimore-banner-ceo-on-progress (last visited Nov. 19, 2026).

[4] *See https://fred.stlouisfed.org/series/MDPOP* (last visited Nov. 19, 2026). Even if this were limited to the Greater Baltimore Area, the disparity remains the same. There are 2.8 million people who live in the Baltimore-Columbia-Towson area. *See https://fred.stlouisfed.org/categories/27302* (search Maryland and then MSAs) (last visited Nov. 19, 2026).

**C. The Trustee's Undue-Burden Argument Addresses an Objection Columbia National Has Not Made.**

Columbia National incorporates herein Section III.B of the Opposition. Although Columbia National's original written objections asserted undue burden, it has not objected to the requested production protocol on that basis. It has consistently stated that it will collect, search, and produce in accordance with the protocol if its costs of compliance are reimbursed. The Trustee's argument that Columbia National has not substantiated an "undue" burden, ECF No. 295 at 6–8, therefore addresses the wrong question. In *Legal Voice*, the Ninth Circuit reversed a district court that "erred in its interpretation of Rule 45(d)(2)(B)(ii) by framing the issue in terms of undue burden, rather than significant expense," and held that the court "should have considered only whether that cost was significant." 738 F.3d at 1184–85.

The Trustee's specific criticisms are also unfounded. First, the Trustee faults Columbia National for declining to generate a "hit report" before cost reimbursement is resolved. ECF No. 295 at 7–8. But generating a hit report is not a cost-free preliminary step. As Columbia National explained, it requires collecting more than 100 GB of data, downloading it from Columbia National's server, importing it into a review platform, and running the search terms. *See* ECF No. 295-1 at 24-26. Those are the same collection and processing steps that are included in the compliance costs in dispute. Asking Columbia National to incur them first, and to resolve reimbursement later would require it to absorb a substantial part of the expense while waiving the protections of Fed. R. Civ. P. 45(d)(2)(B)(ii). *See In re Am. Kidney Fund, Inc.*, 2019 WL 1894248, at *4 (D. Md. Apr. 29, 2019) (explaining that if the responding party objects to, but then produces the

discovery requested prior to the court issuing an order requiring such production, the protections of Rule 45(d)(2)(B)(ii) do not apply).[5]

Next, the Trustee questions why Columbia National would need to "continue to pay to host the data" after production. ECF No. 295 at 8. Columbia National would not need to continue to host the data after production, but it would need to host the data until production is made. Hosting costs are incurred while the data is processed and searched, the hit reports are run and production is ultimately made. Columbia National estimates that it will take 3 months for this to happen and therefore, has included 3 months of hosting in the cost estimate. *See* ECF No. 297-5. Of course, the actual hosting time could be more or less depending on the demands of the Trustee and the Interested Parties. Finally, the Trustee contends that Columbia National has provided no basis for its cost estimate. ECF No. 295 at 8. Until now, the Trustee has never requested such support nor has he ever challenged the estimate provided by Columbia National. To the extent the Trustee wants to understand the basis for the cost estimate, Columbia National refers the Trustee to the declaration of Shawn McClurg attached as Exhibit E to the Opposition. *See* ECF No. 297-5.

## III. CONCLUSION

For the foregoing reasons and those stated in the Opposition, Columbia National respectfully requests that the Court deny the Motion or, if the Court orders compliance with the Trustee's subpoena, require the Trustee and the Interested Parties to share Columbia National's costs of compliance. Alternatively, the Court should require the Interested Parties to bear all of Columbia National's costs of compliance and permit them to assert an administrative expense

[5] The Trustee criticizes Columbia National for refusing to "simply produce the information under a reservation of rights with respect to its requested reimbursement of costs that could be resolved at a later time." ECF No. 295 at 4. Such criticism is unfounded and ignores the law.

claim in the bankruptcy. Either way, Rule 45(d)(2)(B)(ii) requires that Columbia National be protected from the significant expense of compliance with the Trustee's subpoena.

Dated: November 20, 2026

Respectfully submitted,

/s/ Emily K. Devan

Brian Moffet, Fed. Bar No. 13821
Emily K. Devan, Fed. Bar No. 18595
Miles & Stockbridge P.C.
100 Light Street, 7th Floor
Baltimore, Maryland 21202
Phone: (410) 385-3413
bmoffet@milesstockbridge.com
edevan@milesstockbridge.com

*Counsel for Columbia National Real Estate Finance, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of November, 2026, a copy of the foregoing Opposition to Motion to Compel was served on all parties receiving notice pursuant to the Court's CM/ECF service, including:

Frank J. Mastro
Roger Schlossberg
Zvi Guttman
fmastro@schlosslaw.com
rschlossberg@schlosslaw.com
zvi@zviguttman.com
*Counsel to the Trustees*

Aaron L. Casagrande
Aaron.Casagrande@IceMiller.com
*Counsel to the Honig Parties*

/s/ Emily K. Devan
Emily K. Devan